State vs. Waggoner et al.

## No. 213.

### THE STATE OF LOUISIANA VS. J. A. WAGGONER ET AL.

| 39 | 919 |
|----|-----|
| 45 | 1144 |

| 39 | 919 |
|-----|-----|
| f118 | 195 |

In all criminal trials the State is entitled to six peremptory challenges for each of the parties who are jointly on trial.

The discretion of the trial judge to discharge jurors on the panel for reasons satisfactory to him will not be reviewed on appeal.

In cases of conflicting statements of facts, in bills of exceptions, between judge and counsel, the Supreme Court will accept the statements of the judge; unless proper means are taken by counsel to vindicate their contention.

Evidence taken in support of a motion for new trial will not be considered on appeal if it is not embodied in, or made part of reference of a bill of exceptions.

An attack by the defense on the veracity or credibility of a State witness, may be legally met in rebuttal by the State by testimony to sustain the assailed witness.

If the attempt is to show that the witness had previously made statements or declarations contradictory to his testimony on the trial, it is competent for the State to show that soon after the occurrences which he relates. he had made to persons other than the impeaching witnesses, declarations in harmony with his testimony on the trial, although the particulars of his statements thus made are not admissible.

APPEAL from the Second District Court, Parish of Bossier
Drew, J.

*J. A. W. Lowry,* District Attorney, and *M. C. Elstner* for the State,
Appellee.

*Watkins & Watkins* for Defendants and Appellants.

The opinion of the court was delivered by

POCHÉ, J.   This appeal is brought up by J. A. Waggoner from a con-
viction of murder without capital punishment, under an indictment
charging him and four others with the commission of said crime.

His complaints are numerous and are embodied in eight bills of ex-
ception.

### I.

In his first bill he charges error in the ruling of the judge who re-
fused to restrict the State to six peremptory challenges. Under the
law, Act No. 30 of 1878, the State was entitled to thirty peremptory
challenges as there were five accused jointly charged and tried to-
gether.   State vs. Green, 33 Ann. 1408.

### II.

His second complaint is levelled at the discharge by the judge of one
of the jurors of the panel without allowing him a chance to test the
qualification of said juror.

We are informed by the judge that he discharged the juror, before
the latter was called, for reasons satisfactory to himself.   In so doing,
he did not tresspass beyond the bounds of the discretion vested in him
by law, and we have neither the power nor the disposition to interfere
with the proper exercise of his discretion.   State vs. Somnier, 33 Ann.
237 ;   State vs. Rountree, 32 Ann. 1144 ;   State vs. Kane, 32 Ann. 999.

### III.

The defendant also complains that he was illegally denied the right
of questioning a State witness who had described the wounds of the
deceased, as to the effect of the first wound received by the latter.

But the judge emphatically denies the statement of the facts made
by counsel, and asserts that the question was allowed and that it was
answered by the witness.   With due deference to counsel, we must be
guided by the bill which is the recital of the incident under the signa-
ture of the trial judge.   We have had frequent occasions to announce
and to follow this rule, which we feel compelled to adhere to, as long

as proper means are not resorted to or provided for the purpose of adjusting differences of that nature which arise between judge and counsel.

## IV.

Counsel urges that his client was injured by the following incident: A State witness, a brother of the deceased, was asked by the district attorney whether he made the affidavit against the accused after the first or second trip which he made to the place where the homicide had been committed; to which he answered that he made the affidavit on the occasion of his second visit, and after seeing the widow and the young son of the deceased. The charge that the attempt through this question was to create the impression on the minds of the jury that the witness had acted on information received from the widow or her child, is not borne out by the facts disclosed in the bill, and we are at a loss to discover wherein the judge erred in his ruling.

## V.

The complaint embodied in the fifth bill, and which is to the effect that the district attorney was illegally allowed to put leading questions to a State witness who had stated that she was afraid to testify in the cause, is flatly denied by the judge, who asserts that no bill had been reserved on that matter during the trial.

## VI.

Counsel also charges error in the ruling which allowed the district attorney to ask a witness where J. A. Waggoner was after the preliminary examination of his case. The judge says that the door to this inquiry had been opened by the accused himself, who had proved by witnesses that before the preliminary examination he had been allowed many liberties, and that he had not attempted to escape.

The evidence was properly allowed as rebuttal testimony; although the whole matter decidedly appears to be more trivial than important.

In justice to counsel, we must state that he has not dealt with that contention as at all serious.

## VII.

The grounds which make up the seventh bill involve the only difficult question in the case.

They grow out of the following incident: The only direct testimony touching the homicide had been given by the son of the deceased, a boy of the age of ten or eleven years, who had testified that he had witnessed the commission of the deed, in broad daylight, and that he recognized J. A. Waggoner as one of the perpetrators of the same.

As could be naturally expected, the defense resorted to all available means to impeach his credibility, to weaken his testimony, and destroy its effect on the minds of the jury.    As one of such means, counsel for the accused asked, on cross-examination of the boy's uncle, whether he had not stated to a certain person that the little boy had told him " that he did not know who shot his father."

It then appears that in rebuttal the State introduced as a witness the widow of the deceased, the mother of the boy, who was asked whether the boy had made any statement to her touching his knowledge of the homicide, to which she answered that a few minutes after the murder, the boy had told her that he knew who had killed his father.

The theory on which the defense resisted that evidence, is that it was hearsay, not part of the *res gestœ*, and that it was not in rebuttal of any of its testimony previously introduced.

The evidence was not offered as part of the *res gestœ*, but was merely intended to sustain the boy, whose credibility had been avowedly assailed by the defense.    The contention that the evidence was irrelevant because the defense had not questioned the mother on the subject-matter is not tenable.    The party who offers a witness, whose testimony is impeached by the other side, cannot be confined in his warranted effort to sustain his witness, within the narrow bounds of an examination of the witness whose testimony was sought to be used in the attack.

The question raised by the defense in the course of examination which it had followed, was the credibility *vel non* of the boy as a witness in the case, and the door which it had thus opened could not be closed against the State.

As a rule of evidence, the right of a party to uphold and sustain his witness whose veracity has been assailed, rests on sound principles of justice and fairness as well as of law, and it finds ample sanction in jurisprudence.

The object of the defense was to impair the force and effect of the boy's testimony by showing that he had previously denied any knowledge of the homicide, and that his statements on the trial were the result either of corrupt influences or motives, or of malice towards the accused.    It was, therefore, competent for the State to repel the attack by showing that his present statement was consistent with his previous declarations made at a time not suspicious.    It is to be noted that the mother did not state the details of his declarations to her, but testified to the simple fact of his telling her that he knew who had shot his father.

Wharton in his valuable work on Criminal Evidence thus comments on this subject: · "On the other hand, where the opposing case is that the witness testified under corrupt motives, or where the impeaching evidence goes to charge the witness with a recent fabrication of his testimony, it is but proper that such evidence be rebutted. Thus where on an indictment for perjury a witness for the prosecution swore that B (the defendant in a trial for arson) was not at the place of the burning at the time of the fire, but was confronted at his cross-examination by his testimony to the contrary on the arson trial, it was held that, as he had been discredited, he might be sustained by showing that he had made to C, immediately after the arson, a statement in harmony with that made by him on the perjury trial, though the particulars of the statement were inadmissible." Sec. 492.

In the same line of thought, this Court said in the case of Fahey, 35 Ann. 12: "The veracity of a leading State witness having been assailed by the defense, it was not only legal but incumbent on the part of the prosecution to attempt by testimony to maintain his good character."

The same line of conduct was justified in the case of Robertson, 38 Ann. 618, in which the Court said: "The object of calling this witness was not to furnish original or independent proof to support the charge itself, but the sole purpose and effect of such evidence was to sustain the testimony of the prosecution—the principal witness." See also State vs. Melton, 37 Ann. 77; Phillips on Evidence, pp. 303, 304.

It is, therefore, safe to conclude that the bill discloses no error to the prejudice of accused.

## VIII.

The last bill is levelled at the refusal of a new trial. The main grounds of the motion were the alleged misconduct of the jury, and of one of the counsel for the prosecution in his line of argument to the jury, but as the evidence taken in support of the motion has not been legally embodied in, or legally connected with the bill of exception, it cannot be considered by this Court.

This rule is too deeply imbedded in our jurisprudence to need any further comment at our hands at this late day. We leave the point with a simple reference to our recent utterances on the subject in the case of Deas, 38 Ann. 581.

The charge that the accused was not present, as far as the record shows, during the hearing of a motion for a change of venue, that the jury made a change of foreman during their deliberations, are contained

in the brief of counsel only, were not urged below and are not con tained in an assignment of errors; hence they cannot be considered.

A thorough review of the whole case leaves us convinced that th accused has had a just, fair and impartial trial, and that we are power less to relieve him.

Judgment affirmed.