# Beavers v. The State.

*Indictment for Murder.*

1. *Evidence of identity of defendant; when admissible.*—Where, on a trial for murder, the identity of the defendant with the assassin is the matter in issue, the defense being an alleged *alibi*, and a witness has testified to the facts of the killing, and the presence and flight of a man from near the scene of the murder, and to his recognition of the defendant as the man, and that he saw the defendant the next morning after the killing when in an officer's custody, it is permissible to ask such witness did he "recognize the man then under arrest as the

same man who had done the assassination and run off the evening before?" and his answer in the affirmative is competent and admissible evidence.

2. *Threats; charge as to probative force.*—Where, on a trial for murder, evidence of threats by defendant against deceased, at different times during 12 months preceding the killing, are admitted to show motive, and to connect the defendant with the commission of the homicide, it is not error for the court, after instructing the jury, that if threats were made, their weight was to be determined by the jury, to further instruct them, that "the probative force of the threat would be increased if it was frequently repeated during the whole time intervening between its first utterance and the doing of the criminal act, and the same cause for ill will and hate continued to exist."

3. *Charge as to alibi.*—In a criminal case, a charge that instructs the jury that "It is obviously essential to the proof of an *alibi* that it should cover and account for the whole of the time of the transaction in question, or, at least, so much of it as to render it impossible that the prisoner could have committed the imputed act," does not assert a correct proposition of law, deprives the defendant of the benefit of a reasonable doubt on all the evidence, and the giving of such a charge is a reversible error.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

The facts of this case are sufficiently stated in the opinion.

JONES & MAYFIELD, for appellant.—The court erred in overruling defendant's objection to the question asked the witness Crowder.—*McKelton v. State*, 86 Ala. 594. The portion of the court's charge in reference to what is essential to prove an *alibi* was clearly erroneous.—*McAnally v. State*, 74 Ala. 91; *Albritton v. State*, 94 Ala. 76.

WM. L. MARTIN, Attorney-General, for the State.

HEAD, J.—Appellant was convicted of murder and sentenced to imprisonment in the penitentiary for life. One Oscar Crowder, a son of deceased, testified that he was with his father in a certain corn-field when the latter was shot by some one hid in the woods or bushes near by. As soon as the gun fired, he raised up, and seeing his father fall over, he turned around and saw a man in the act of running. He stepped to the left to see if he could see him and tell who he was; and stepping 5 or 6 steps saw the man running. Until then the smoke and

bushes prevented his seeing him. He looked at the man as he was running off. The identity of the defendant with the assassin was the matter in issue, his defense being an alleged *alibi*; in support of which he introduced the testimony of a number of witnesses. After the witness, Crowder, had testified to the facts of the killing, and the presence and flight of the man whom he saw run from near the scene of the murder, and his recognition of the defendant as the man, he further testified, on interrogation by the State, that he saw the defendant the next morning after the killing, when he was in custody of the officers ; and witness was then asked by the prosecution : "Did you recognize the man then under arrest as the same man who had done the assassination and run off the evening before?" The defendant objected to this question, and reserved an exception to the overruling of his objection. The witness answered in the affirmative. There was no error in this ruling.

The State introduced evidence of threats made by the defendant against the deceased, at different times, extending over a period from about twelve months, to within about two weeks, before the killing. In the oral charge, the court said to the jury, in treating of the subject of threats : "So the probative force of the threat would be increased if it was frequently repeated during the whole time intervening between its first utterance and the doing of the original act and the same cause for ill will and hate continued to exist. Then it would be imputed to a malignant spirit and a purpose that may have been vacillating but at last became fixed and settled." The defendant excepted to this instruction, and now argues that it invaded the province of the jury. In the same connection, the court had said that, "If threats were made, their weight is to be determined by the jury. If a long period intervenes, during which there were opportunities of doing the threatened injury, and there was no attempt to do it, and no repetition of the threat, it would be but a slight circumstance in connecting the accused with the injury, and there would be more reason for regarding it as having been a mere careless utterance, or idle bravado, or ebullition of passion ;" and the court, concluded what it had to say, on this subject, with the remark, "But, as before stated, if any threats are proven their weight must be determined by the jury." It will

be observed that the portion of the charge excepted to, embraces two distinct propositions, stated in as many complete sentences : 1st. That the probative force of the threat would be increased if it was frequently repeated during the whole time intervening between its first utterance and the doing of the criminal act, and the same cause for ill will and hate continued to exist. 2d. That it would then be imputed to a malignant spirit and a purpose that may have been vacillating, but, at last, became fixed and settled. To sustain the exception, it must be determined that both propositions were erroneous. It is not questioned that such threats were admissible in evidence to show motive, and to connect the defendant with the commission of the homicide. They are received, of course, because, in judgment or law, they tend to prove these material elements of the charge ; in other words, because, in the view of the law, they possess material probative force. It is not perceived, therefore, why the court may not assume before the jury, that, if such threats were made, they possess probative force, and to declare to the jury, that which is obviously true, that such force would be increased, if the threat was frequently repeated during the whole time intervening between its first utterance and the doing of the criminal act, and the same cause for ill will and hate continued to exist, beyond the force which should be accorded to it, if a long period intervened during which there were opportunities of doing the threatened act and there was no attempt to do it, and no repetition of the threat. The court did not undertake, in the first proposition of the charge excepted to, to tell the jury just what degree of force or weight they should give the defendant's threats, but declared a principle, merely, correct in itself, leaving it to the jury to determine their proper weight. It was no more, in effect, than if the jury had been instructed, that in determining the weight they should give the threats, they might consider the frequency of their repetition, the length of time they covered, their nearness to the homicide, the opportunities of carrying them into execution and the continuance or not of the ill will and hate, if any, which prompted them. This determines the exception, in this connection, not well reserved ; but, we inquire if it was not an invasion of the province of the jury to instruct them, as in the second proposition

of the charge, that the threats, under the conditions mentioned, would be imputed to a malignant spirit, and a purpose, "at last fixed and settled."

The court, in its oral charge, gave the following instruction, which was excepted to : "It is obviously essential to the proof of an *alibi* that it should cover and account for the whole of the time of the transaction in question, or at least so much of it as to render it impossible that the prisoner could have committed the imputed act." Under the evidence tending to prove an *alibi*, if true, it may have been possible for the defendant to have committed the crime; but its character was such that it was most clearly for the jury to determine whether, if the evidence was true, he availed himself of the possibility it afforded. Similar instructions were declared erroneous, for reasons there given, which we need not repeat, in the following cases : *McAnally v. The State*, 74 Ala. 9 ; *Albritton v. The State*, 94 Ala. 76 ; *Pate v. The State*, 94 Ala. 14.

Reversed and remanded.