139 So.2d 309

**Drewey AARON**

v.

**STATE of Alabama.**

**3 Div. 955.**

Supreme Court of Alabama.

Sept. 28, 1961.

Rehearing Denied April 5, 1962.

338

Solomon S. Seay, Jr., Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., Geo. D. Mentz, Asst. Atty. Gen., and Wm. F. Thetford, Circuit Sol., Montgomery, for the State.

**340**

MERRILL, Justice.

Appellant, a negro, was tried and convicted of raping a white woman and the death penalty was adjudged. An appeal was taken and this court reversed, 271 Ala. 70, 122 So.2d 360. The cause was again tried and the same judgment again resulted. Counsel of appellant's own choice represented him at original arraignment, and continued to represent him at both trials and on both appeals.

On the first appeal, we treated all the pertinent questions whether or not raised in brief. The second trial followed the first opinion except in the instances in which there was some disagreement with the way the matter was originally handled. Since the first opinion disposes of most of the questions which could be raised on this appeal, we treat mainly those questions argued by appellant in brief.

The jurors, regular and special, were sworn, and they were called to the rail in groups of 5, 7, 10, 12, 15 and 17. Each group was questioned as to his qualifications and the trial court then asked them thirty-three questions which had been furnished him by appellant.

One point raised in brief was that the court erred in qualifying the jury in groups. In Burns v. State, 226 Ala. 117, 145 So. 436, this court approved qualifying and impaneling the jury in groups of twelve, and in Untreiner v. State, 146 Ala. 26, 41 So. 285, in groups of six. The trial court committed no error in the instant case by qualifying the jury in groups.

Appellant sought to "personally interrogate each prospective juror." The court refused to permit this, but stated that the court would ask any questions for appellant. Counsel for appellant stated then, and here on oral argument, that it has long been the practice in the Circuit Court of Montgomery County for the court to ask all of the qualifying questions. However, when any juror would answer any question in such a way as to indicate any bias or interest, counsel for appellant was permitted to personally interrogate that particular juror as to the details. In Burns v. State, 226 Ala. 117, 145 So. 436, 437, it was said:

"The court had qualified the jury and refused to allow counsel to cross-examine or interrogate each juror personally. The statute placed the right 'to examine said jurors as to any matter that might tend to affect their verdict * * * under the direction of the court,' a matter largely within the discretion of the court. In this there was no error. * * *"

Title 30, § 52, Code 1940, provides:

"In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict."

 It is the rule of our cases that the limit of voir dire examination is left much to the discretion of the trial court, and we do not think the circumstances here show an abuse of that discretion. Sims v. Struthers, 267 Ala. 80, 100 So.2d 23; Redus v. State, 243 Ala. 320, 9 So.2d 914; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Gholston v. State, 221 Ala. 556, 130 So. 69; Rose v. Magro, 220 Ala. 120, 124 So. 296.

Appellant argues that the court destroyed the effect of two of the questions by re-stating or explaining them. The first such instance follows:

"Do you believe that the arrest and indictment of the defendant are some indication of his guilt? The Court would instruct you that an indictment against the defendant is no evidence of his guilt. Would you take the instructions of the Court, or would you believe that anyway? I say, if the Court instructed you, which I always do, that an indictment against an individual is in no wise evidence of his guilt, would you in spite of that fact just because he was indicted believe it was evidence of his guilt? (All jurors answered in the negative.)

"Lawyer Seay: If the Court please, we wish to object to the Court's re-phrasing that specific question.

"The Court: Well, the only reason I do it is because I instruct all of them as to any indictment, an indictment is in no wise evidence of his guilt.

"Lawyer Seay: If Your Honor please, the question was designed to probe into the present state of mind of the defendant.

"The Court: Oh, I will ask them now if they believe without the Court's instructions is evidence of his guilt. (All jurors answered in the negative.)"

 The first sentence was the question posed by appellant. There is a great dif-ference between an indication of guilt and evidence of guilt. The average juror knows that no person can be tried for a felony until there has been an indictment by a grand jury. There must have been some indication of guilt to the grand jury or the defendant would not have been in-dicted. The question as phrased was mis-leading and the court could have properly disregarded it, but it was asked with an explanation by the court that removed all the misleading tendencies. In this, there was no error.

The second instance follows:

"Do you believe that it would vio-late community feelings to vote to ac-quit the defendant?

"A Juror: If there was no evidence?

"The Court: If the evidence didn't justify it. He doesn't add that. The Court might ask you—what he really means—if you were to vote to acquit the defendant and the evidence in the case justified acquitting him, would it violate community feeling?

"Lawyer Seay: If it please the Court, we would like to object to the Court re-phrasing the question. What the defendant wants to know is wheth-er or not they feel that a verdict of not guilty by them would violate com-munity feeling.

"The Court: Well, I think you have to ask them about the evidence be-cause if they just turn him loose irre-spective of the evidence or anything, or if they would convict him without any evidence, then if you believe it would violate community feelings to acquit the defendant without more, I don't think is a fair question.

"Lawyer Seay: If the Court please, we respectfully object.

"The Court: All right. I will ask them if the evidence doesn't justify it if you think it would affect community feeling if you turned him loose."

■ This was another question which could have properly been disregarded. As worded, it would presuppose that the jury would act without any evidence. It was proper for the court to call to their attention that the verdict must be based on the evidence. Again, no prejudicial error occurred.

Appellant argues that error is shown in the following, which occurred during the qualification of the jury:

"Do any of you believe that the arrest and indictment of the defendant are some indication of his guilt?

"A Juror: If he has been indicted there must have been some reason why he was indicted.

"The Court: Would you have that same belief if I were to tell you, which I always do in every case, whether it is a capital case or any other, the fact that there is an indictment in the case is no evidence of the man's guilt?

"A Juror: Would you state that again, please?·

"The Court: I said, would you still think that it was an indication, some indication of his guilt if he was indicted if the Court were to instruct you the fact that an indictment is returned against an individual is in no wise evidence of his guilt?

"A Juror: Yes, I would.

"The Court: You think so anyway?

"A Juror: Oh, no, I wouldn't.

"Lawyer Seay: Your Honor, we move to challenge this gentleman for a cause on the ground by his answers to the question he has exhibited some indication of feeling of guilt on the part of the defendant."

■ The record shows no ruling on the motion. But we think the record does show that when the juror understood that the indictment was not evidence of guilt, he would follow the charge of the court on that subject. No error is shown in this instance.

It is charged that the court erred in failing to ask the group of seven if any of them were related by blood or marriage to the prosecutrix or any of the lawyers in the case. This question was asked all the other jurors, but was not one of the thirty-three questions requested by appellant.

The cases cited by appellant are instances where jurors withheld information and did not give the correct answer when questioned. This is not the situation here. There is no indication in this record that any juror was related to parties or attorneys. This question was not raised on the motion for a new trial and is raised for the first time on appeal.

■ The rule is that in failing to use reasonable diligence in testing jurors as to their qualifications or grounds of challenge, there is a waiver of the ground of challenge; and the defendant cannot sit back and invite error because of a juror's qualification. Batson v. State, 216 Ala. 275, 113 So. 300; Beasley v. State, 39 Ala.App. 182, 96 So.2d 693. The rule was applied where it was later discovered that one of the jurors should not have served on the jury—in the Batson case, he was an alien, and in the Beasley case, he had been convicted of a crime involving moral turpitude. But here, there has been no showing of any incapacity to serve or the failure to answer any question correctly.

■ Substantial error is not presumed, but the burden is upon the appellant to show error. McCall v. State, 262 Ala. 414, 79 So.2d 51; Washington v. State, 259 Ala. 104, 65 So.2d 704; Kabase v. State, 244 Ala. 182, 12 So.2d 766. Appellant did not object to the omission of the question, nor did he request that it be asked. No reversible error has been shown.

Appellant argues that the physical examination and photographs made of him after his arrest violated his constitutional rights. This question was discussed fully in the opinion on first appeal, and we held that no error was committed. Aaron v. State, 271 Ala. 70, 122 So.2d 360. The evidence there is identical to that in the record now before us.

Finally, appellant argues that his rights under Sec. 6 of the Constitution were violated in that he was "compelled to give evidence against himself," because he was asked to repeat certain words.

The evidence on this question was fuller and more detailed than on the first trial. H. W. Mitchell, a deputy sheriff, testified that he took appellant into a room at the city jail which had a "two-way window," permitting one on the outside to see inside the room, but not permitting one in the room to see through the window. The door to this room was slightly ajar to enable prosecutrix, who was outside the room, to hear the conversation between Mitchell and appellant.

The undisputed testimony of Mitchell on cross-examination was that after a general conversation of approximately ten minutes, he asked appellant to repeat some words —"turn me loose"—which prosecutrix testified her attacker had said to her. It was also undisputed that no threat, coercion, hope or promise of reward was made to appellant.

Dr. Murchison, prosecutrix's physician, accompanied her on the trip to the jail and was with her when she looked into the room with the two-way glass and heard Mitchell and appellant talking. His undisputed testimony was that appellant and Mitchell were talking when he and prosecutrix walked into the room and "she identified his voice immediately." He recalled that appellant was asked to repeat one particular phrase after a general conversation of several minutes, but he was positive that prosecutrix had "identified the voice prior to any questions from anyone."

Prosecutrix identified the shirt and trousers worn by appellant at the time of his arrest as being those worn by her attacker. She identified appellant by his build, his voice and his general appearance. There is no evidence in this record by any witness that the identification of appellant by prosecutrix was based upon his repeating of the words—"turn me loose." To the contrary, the undisputed evidence is that she identified him before he was asked to repeat the phrase. Also, there is no evidence that appellant was compelled to do anything.

But appellant argues that his constitutional rights under Sec. 6 were violated because he did not know that prosecutrix and Dr. Murchison were watching and listening when he was talking. This question was recently settled by us in Seals v. State, 271 Ala. 142, 122 So.2d 513. In that case, we committed ourselves to the holding that a defendant may be required to stand in a certain place where he can be observed and be required to talk so that his voice can be heard by his alleged victim when he is not aware that he is being observed or listened to.

In the Seals case the original record shows that nine persons, including the defendant, were required to participate in a lineup at police headquarters. Each person in the lineup was brought from the lineup in front of a door with a two-way glass, behind which the prosecutrix was standing, but this fact was not known to the defendant or the others in the lineup. Each person was required to "walk up to the door and pivot themselves to the right and revolve around slowly that they can be seen from all sides," and "as a suspect comes up to the door, just before he turns around, or shortly after, before he takes his original place in the line-up again, he was asked his age, his employment, the type or work he done, and the church which he might attend." The prosecutrix there identified two of the suspects as her assailants after these two had been brought around in front of the door a second time and asked the same questions.

She had asked to "hear" these two a second time.

We cannot say that any substantial right of appellant was prejudiced when he was looked at and listened to for purposes of identification without his knowledge. Seals v. State, supra.

The facts surrounding the commission of the crime are fully set out in Aaron v. State, 271 Ala. 70, 122 So.2d 360, 367. They will not be repeated here at length. It is sufficient to say that on the afternoon of June 27, 1959, after a few minutes in her yard, prosecutrix went inside her home, opened a closet door and a Negro man inside pulled her into the closet and "a terrific struggle took place therein for approximately fifteen minutes." They fell out of the closet into the room and fought there for several minutes. Finally, prosecutrix became exhausted, was tied and then raped.

As soon as her assailant had left the house, prosecutrix notified the authorities and, in a short time, appellant was seen to back an automobile from a dead end clearing in a wooded area about one mile from the home of prosecutrix. The car was driven at a high rate of speed but was overtaken, and appellant, the only occupant of the car, was arrested.

At trial, the evidence of appellant's guilt was overwhelming. He did not take the stand, nor did he attempt to account for his whereabouts during the time of the assault by alibi or otherwise. There was some lay testimony, mostly by relatives, that he had a good reputation in the community and that he was not sane. It was undisputed that appellant was one of nine illegitimate children and that his mother died in an institution for the insane.

Lay evidence by appellant's employers and fellow workers was adduced to show that appellant had been a truck driver for several months and was sane. Dr. Bazar, a practicing psychiatrist, testified that in his opinion, appellant was sane. As stated in the first opinion:

"The issue, therefore, of insanity as excuse for the crime was for the determination of the jury. This issue was determined adversely to the defendant. We think the verdict was well founded." Aaron v. State, 271 Ala. 70, 122 So.2d 360, 369.

We have already mentioned Dr. Murchison's testimony that he was with prosecutrix on July 7th when she identified appellant at the jail by looking at him through the two-way window and hearing his voice. Although there was no objection to that testimony, and no question about it is raised in appellant's brief, we think a fuller discussion is required to show the circumstances under which this evidence was admitted, since it was evidence of an extrajudicial identification.

■ The prosecutrix positively identified the appellant at the trial, and stated without objection that she positively identified him at the jail on July 7th. In this there was no error. Beavers v. State, 103 Ala. 36, 15 So. 616; Yarbrough v. State, 105 Ala. 43, 16 So. 758; Bell v. State, 227 Ala. 254, 149 So. 687.

The record shows that Dr. Murchison testified that the prosecutrix did "see this defendant and hear this defendant talk," but nowhere did he quote any statement made by the prosecutrix.

■ We hold that the testimony of Dr. Murchison that the prosecutrix identified appellant was admissible at the time it was adduced. It was competent because it was in rebuttal of the inference raised on cross-examination of the prosecutrix and Dr. Murchison that the identification of the appellant by the prosecutrix was manufactured.

The prosecutrix was cross-examined about her failure to identify appellant as her assailant when he was in a lineup at her home shortly after she had been attacked, and also as to her identification of him at the jail on July 7th. Dr. Murchison was also cross-examined as to the number of

men in the lineup when the prosecutrix failed to identify appellant. The effect of this cross-examination was to raise the inference that, since the prosecutrix had not identified appellant in the lineup on the day of the attack, evidence of her subsequent identification of him at the jail on July 7th was manufactured.

This question was raised and settled in the case of Yarbrough v. State, 105 Ala. 43, 16 So. 758, 760. The assaulted witness, Cole, had testified that he knew and identified the defendant at the time of the assault, but he did not have the defendant arrested until several months later. Cole was cross-examined as to whether he did not swear out a warrant for the defendant until one Polly Foster had been arrested and had told Cole that the defendant and another had conspired to rob him. Then Polly Foster, a witness for the State, was cross-examined along the same lines. In rebuttal, the State showed that Polly Foster had made this same statement before she had been arrested. This court, speaking through Coleman, J., said:

> "* * * The evidence thus elicited on cross-examination by the defendant, was competent as tending to affect the credibility of the witness for the prosecution; and the question is presented, whether it was competent, in rebuttal, to show that the witness Polly Foster had made the same statement to Cole and to others before her arrest as she made subsequent to it. We are of opinion that such evidence is competent. The distinction must be kept in mind between such evidence and its purpose, and when a witness attempts to corroborate his own evidence, by proof of having made similar statements to others. The latter is inadmissible. * * * This evidence could not be considered as original or corroborating evidence of the truth of the fact testified to, but purely in rebuttal of the inference, that the testimony was manufactured or the result of the unfriendly act."

The judgment of conviction was affirmed.

The general rule is that evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation or inference of falsity. Annotation 71 A.L.R.2d 487; State v. Waggoner, 39 La.Ann. 919, 3 So. 119; Thompson v. State, 223 Ind. 39, 58 N.E.2d 112; Faulkner v. State, 104 Tex.Cr.R. 378, 283 S.W. 824; People v. Kynette, 15 Cal.2d 731, 104 P.2d 794; People v. Slobodion, 31 Cal.2d 555, 191 P.2d 1; State v. Neiman, 123 N.J.L. 341, 8 A.2d 713. A full annotation on extrajudicial identification is found in 71 A.L.R.2d 449.

This rule is similar to that in cases where a witness is questioned as to details of a complaint of rape

In prosecutions for rape the State may, on the direct examination of the prosecutrix, prove the bare fact that she made complaint of the injury, and when and to whom, and she may be corroborated by the person to whom she complained as to the same fact.

When the complaint does not constitute a part of the res gestae, but is received only in corroboration of the prosecutrix's testimony, the general rule is that the details or particulars cannot be introduced, in the first instance, by the State. This would exclude any statement made in the complaint pointing out the identity of the person accused, or explaining the injuries claimed to have been received, or otherwise giving the minute circumstances of the event.

But there are at least two instances where the details of such complaint can be proved: (1) They may be elicited on cross-examination by the defendant; and when this is done only in part, the State may then proceed to prove, on the rebutting examination, the whole complaint. (2) Where the testimony of the prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the State to prove such details, and to prove that she told the story the same

way to others, confirmatory of her first statement.

These rules were stated and affirmed in Barnett v. State, 83 Ala. 40, 3 So. 612, and have been followed or restated in other cases. See Griffin v. State, 76 Ala. 29; Bray v. State, 131 Ala. 46, 31 So. 107; Allford v. State, 244 Ala. 148, 12 So.2d 407; Lee v. State, 246 Ala. 69, 18 So.2d 706; Huggins v. State, 271 Ala. 428, 123 So.2d 911.

We again stress the fact that under the reason stated for the admissibility of the testimony of Dr. Murchison, it would not have been admissible as original testimony, but was rendered admissible after the inference had been raised by cross-examination that the original testimony as to the identification had been manufactured.

As required by us in cases of this nature, we have carefully examined the record for reversible error, whether or not it was called to our attention in brief. The testimony as to the use of the bloodhounds is free from error and the objectionable pages in the hospital records were not offered in evidence on the second trial. Finding no reversible error in the record, the judgment is affirmed.

Affirmed.

All the Justices concur.