238 So.2d 887

**Judge ROSS, Jr.**

v.

**STATE.**

**I Div. 59.**

Court of Criminal Appeals of Alabama.

Aug. 25, 1970.

MacDonald Gallion, Atty. Gen., and Charles H. Barnes, Asst. Atty. Gen., for the State.

CATES, Judge.

Robbery: sentence ten years.

## I

We quote from appellant's brief for a statement of facts:

"Appellant requested voir dire examination of the prospective jurors by his attorney instead of by the Court. This motion was denied. * * *

"A witness testified that she was employed at a curb market in Saraland * * *. On September 27, 1968, in the late evening, a colored man came into the

Thomas M. Haas, Mobile, for appellant.

store, pointed a hand gun at her and took her money. * * *

"Appellant required voir dire examination of the witness. * * * The witness testified that she had observed a group of pictures provided by police officers. She had picked two * * * pictures of appellant from the group. She stated that this display of pictures had no influence on her identity of the defendant. * * * She observed appellant in the docket room at the Mobile County jail shortly after reviewing the pictures. * * *

"Several police officers testified concerning the details surrounding the identification of appellant. They stated that Mrs. Cobb had been provided with about a dozen pictures, that appellant's pictures were included in this group, that the pictures were lost and not available for examination. Deputy Dees said that the witness observed and identified appellant from a line-up which he had set up in the County jail. * * * The State rested.

"Appellant then offered three * * * alibi witnesses. These witnesses testified that they were with appellant in Prichard and Mobile at the time of the alleged robbery. * * *

"During closing arguments, the following transpired:

"MR. PFLEGER: 'If there had been any question on her part, then under the circumstances, I think it would have been my sworn duty to have told the Court—advise the Court and ask for a nol pross of the case then and there and not go through with any trial.'

"Appellant objected to this line of argument and moved to strike it. The motion was denied. * * *."

## II

The first claim of error rests on Code 1940, T. 30, § 52 which reads:

"In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict."

■ Without reviewing the scope accorded by § 52, supra, which was inserted by the 1923 Code Commissioner, we cannot see any disadvantage to the defendant by putting the enquiry to the venire as a whole. All that the Constitution requires of a jury is that it be impartial, duodecimal and unanimous.

■ We are not confident that § 52 contains a categorical directive to require a trial judge to put questions framed by counsel to a jury. This purports to be left to the judge's discretion both in Gholston v. State, 221 Ala. 556, 130 So. 69 and Ballard v. State, 236 Ala. 541, 184 So. 260. Yet in Aaron v. State, 273 Ala. 337, 139 So.2d 309, which quotes from Burns v. State, 226 Ala. 117, 145 So. 436, it was held that refusal to permit defense counsel to "personally interrogate each prospective juror" was within the judge's discretion. See Anno., 73 A.L.R.2d 1180.

We quote from Seals v. State, 282 Ala. 586, 213 So.2d 645:

"The court did not err in overruling a motion of an attorney for the defendant below that he be permitted 'to examine each prospective juror outside the presence of the other jurors.' Jurors may be qualified on voir dire in groups at the discretion of the trial court. See Burns v. State, 226 Ala. 117, 145 So. 436; Aaron v. State, 273 Ala. 337, 139 So.2d 309.

 * * * * * *

" * * * We have said that § 52, Title 30, supra, does not empower the parties to require the court to put questions to the jury touching matters which might

tend to affect their verdict—Ballard v. State, 236 Ala. 541, 184 So. 260. But we have said that it is within the discretion of the trial judge as to whether he will question the venire of jurors as to matters which tend to show interest or bias not amounting to disqualification, whether or not he is requested by counsel to do so.—Beecher v. State, 280 Ala. 283, 193 So.2d 505, * * *. The trial court propounded to the prospective jurors, in groups, most of the questions which counsel for defendant requested it to do. See Aaron v. State, 273 Ala. 337, 139 So.2d 309."

As a practical matter, § 52, supra, admits of so many avenues of questioning that a trial judge seldom, if ever, can be held to reversible error thereunder. Ward v. State, 44 Ala.App. 229, 206 So.2d 897:

" * * * Defense counsel moved the court to sequester the jurors for the purpose of interrogating them on their bias or lack of bias in the case. The court denied the motion, but again offered to address any questions requested by defendant to the qualifications of the jury as a body.

"Defendant insists the refusal of the court to permit each juror to be examined out of the presence of the remainder of the panel constitutes reversible error. We do not agree. 'It is the rule of our cases that the limit of voir dire examination is left much to the discretion of the trial court.' Sims v. Struthers, 267 Ala. 80, 100 So.2d 23; Aaron v. State, 273 Ala. 337, 139 So.2d 309." We find no abuse of discretion here.

Also, McPhearson v. State, 271 Ala. 533, 125 So.2d 709:

"Perhaps we should observe that the trial court did not abuse its discretion in refusing the appellant's request to examine each juror individually after the court had qualified the jury. The court advised the appellant that he could examine the jury as a whole and this

procedure was pursued. Burns v. State, 226 Ala. 117, 145 So. 436. See Rose v. Magro, 220 Ala. 120, 124 So. 296; Alabama Clay Products Co. v. Mathews, 220 Ala. 549, 126 So. 869."

We find no abuse of discretion here.

III

After voir dire without a jury present and a ruling that Mrs. Cobb's identification was not affected by the line-up without a lawyer, Mrs. Cobb testified in part (with the jury back in the courtroom):

"A * * * A colored man come in at the door with a gun in his hand.

"Q Did he have anything else in his other hand?

"A The end of his tee-shirt, he had it pulled up over the bottom part of his face.

"Q When he came into the curb market there, how was the light in the place?

"A They were bright, good lights.

"Q What type of lights are they?

"MR. HAAS: This is all repetitious.

"THE COURT: Overruled.

"A They are long lights that they have in places of business; they are round bulbs and real long. We have them running—

"Q Are they as low—or as bright as this room here?

"A Brighter than this room because they are lower; they are hanging lower over our heads.

"Q Did you see the individual that came in the fruit stand on that occasion that had his tee-shirt up over the lower part of his face?

"A Yes, sir.

"Q Did he say anything?

"A Yes, sir.

"Q What did he say when he came in?

"A He told me to give him the money out of the register.

"Q Did he make any specifications of any particular type?

"A Yes, sir, when I opened the register he told me to give him the bills, no change.

"Q And what was he doing with the pistol?

"A He was holding it at me and motioning toward the cash register and then back to me again.

"Q Was that money under your care or in your custody?

"A Yes, sir.

"Q Mrs. Cobb, did you get the money out of the cash register?

"A Yes, sir.

"Q What did you do with it, please?

"A He told me to put it on the counter.

"Q Then what did he do, please, m'am?

"A He dropped his tee-shirt with his left hand and picked the money up and turned and went out.

"Q Now, when he dropped his tee-shirt to pick the money up with his left hand, what part of him could you see then?

"A I could see his face. He was facing—standing right in front of me, facing me.

"Q Was there anything to obstruct your view or bar your view of his face at that time and place?

"A No, sir.

"Q Do you see anyone in the Courtroom that you saw on that occasion?

"A Yes, sir.

"Q Point him out, please.

"A That boy over there in the yellow shirt (indicated Defendant).

\* \* \* \* \* \*

"Q Now, Mrs. Cobb, I'll ask you whether or not following that date, did you see this man or his picture anywhere?

"A Yes, sir.

"Q When was that, please?

"A It was a week later at my home.

"Q And how did that happen, please m'am?

"A The police officers brought the picture over to my house for me to look at.

"Q How many pictures did they bring, if you recall?

"A Well. I don't recall exactly the number—some ten or twelve, somewhere in there.

"Q Those pictures, did they appear to be the same type pictures from the standpoint of make-up or the size—

"MR. HAAS: The pictures are the best evidence. We are talking about something that's not here to see, and I object to it—any secondary evidence; the best evidence is the pictures.

"THE COURT: Overruled.

"MR. HAAS: Except.

"WITNESS: They were all the same size pictures and they all looked about the same only the faces and all was different.

"MR. PFLEGER: And did you see among those ten or twelve pictures anybody that you had seen before?

"A Yes, sir.

"Q Who did you see, please?

"A I seen that boy that had come into the fruit stand and robbed me.

"Q Did you have to have that picture to refresh your recollection as to his appearance?

"MR. HAAS: Judge, that calls for a conclusion. The fact is that she was shown a picture or pictures. Whether it refreshed her recollection or not is a conclusion and invades the province of the jury.

"THE COURT: Overruled.

"MR. HAAS: We except.

"WITNESS: No, sir, I didn't need to have my memory refreshed.

"MR. PFLEGER: When was the next time you saw him, Mrs. Cobb?

"A That evening, the evening after I saw the pictures I saw him.

"Q And where was that, please?

"A Down in the Mobile County Court docket room.

"Q Oh, before we leave the pictures, let me get back to one other question. Were there any markings or designations in any way on any of the pictures to signify one picture being different from the others?

"A No—

"MR. HAAS: Judge, now I want to add to my objection that he's using an improper means to bolster an identification.

"THE COURT: Sustained.

"MR. PFLEGER: Did you see any names on any of the pictures?

"A No, sir.

"Q Did you see any numbers on any of the pictures that you looked at?

"A No, sir.

"Q Did you see any unusual markings on any of the pictures that you looked at?

"A No, sir.

"MR. HAAS: Best evidence, and also my other objection, Judge.

"THE COURT: Overruled.

"MR. HAAS: Except.

"MR. PFLEGER: Now, the next time you say in the docket room, is that right?

"A Yes, sir.

"Q And is that here in the Court House building?

"A Yes, sir.

"Q And just tell the jury, if you would, how you happened to see someone there? See someone where?

"MR. HAAS: I object to that.

"THE COURT: On what grounds? On Wade?

"MR. HAAS: Sir?

"THE COURT: I think on the ground that it was after Wade. Wasn't that the decision, the Wade decision?

"MR. HAAS: Yes, sir. Wade and Gilbert.

"THE COURT: All right. My position now is that it's irrelevant and immaterial, and I sustain the objection.

"MR. PFLEGER: Next after that, when was the next time you saw him—not in the docket room but elsewhere sometime later?

"A In General Sessions Court.

"Q And at that time and place did you see the individual there that you had see on the Friday night of the robbery?

"A Yes, sir.

"Q Was that individual the same one you saw on that night then?

"A Yes, sir.

"Q Is he in Court today, the same one you saw there in General Sessions Court?

"A Yes, sir.

"Q Would you point him out?

"A The Defendant (indicated Defendant).

"Q The same man?

"A Yes, sir.

"Q And since the preliminary Court, when is the next time you saw the man, please?

"A This morning.

"Q Now, that was in this Court?

"A Yes, sir.

"Q And having seen him here today, are you positive without any question in your mind that he is the man that you saw and robbed you on Friday night, September 27, 1968?

"A Yes, sir, I am.

"MR. PFLEGER: No further questions."

Officer William L. Watson of the Saraland police force testified in part as follows:

"Q When is the next time you saw Mrs. Cobb?

"A Well, I saw Mrs. Cobb about four or five days later.

"Q And what was the occasion for that, please, sir?

"A Officer Creekmore and myself taken some pictures out to her house for identification.

"Q Now, those pictures that you took, were they all pictures of one person?

"MR. HAAS: The best evidence is the pictures. I object to testimony concerning something not here. The best evidence is the pictures and they ought to be here.

"THE COURT: Overruled:

"MR. HAAS: I except.

"MR. PFLEGER: What were the pictures of, please, sir?

"MR. HAAS: Now, I want a continuing objection to testimony about something that's not in Court for the jury to look at.

"THE COURT: All right, sir. You have one to each question, and an exception to my ruling.

"MR. HAAS: All right, sir.

"MR. PFLEGER: You may answer the question, please, sir.

"A There were pictures of the two subjects in this vehicle plus approximately eight to ten pictures of other subjects that we'd had in the past.

"Q From your personal observation, could you give the Court and the jury some idea as to whether these pictures were approximately the same size and dimensions?

"A Yes, sir. They were the same size. As a matter of fact, they were all taken from the same camera.

"Q All taken from the same camera?

"A Yes, sir."

■ In Robinson v. State, 45 Ala.App. 236, 228 So.2d 850, we undertook to apply United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. Calif., 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178, in the view of the District of Columbia circuit in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230. We believe that the evidence supports the trial judge's ruling that the apparently accidental lineup at which the defendant did not have a lawyer did not tincture Mrs. Cobb's in-court identification. See also Parker v. State, 45 Ala.App. 335, 230 So.2d 247.

■ Also, the use of the photographs for beginning clues comports with Part I of the opinion in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

IV

■ As to the deputy district attorney's argument, we quote in part from Cranmore v. State, 41 Ala.App. 276, 129 So.2d 121:

"Defendant objected to the following statement of the solicitor during argument: 'I never did ask you to convict a man I believe to be innocent.' The court overruled the objection. Counsel excepted and moved for a mistrial. We

think the statement was a mere expression of opinion by the solicitor that the defendant was guilty, and was not a cause for reversal under the following authorities: [citing cases]."

In Wideman v. State, 40 Ala.App. 5, 110 So.2d 295, which appellant cites, the prosecutor was attributing a belief to the judge. Nothing of that sort is here.

We conclude, after review under Code 1940, T. 15, § 389, that the judgment below is due to be

Affirmed.