MOORE, Retired Circuit Judge.
The appellant was indicted, tried, and convicted for the offense of robbery. The verdict of the jury fixed appellant’s punishment at imprisonment in the penitentiary for life. Judgment of conviction and sentence was accordingly entered by the trial court, from which the appellant brings this appeal.
*19 On the trial of this cause Homer L. Johns testified, in substance, that he owned Johns Furniture Company located at 624 Mildred Street, Montgomery, Montgomery County, Alabama; that he was seventy-nine years of age; that on September 8, 1975, he was alone in his store; that about 3:00 P.M. that day two young black males came into his store and said they wanted-to buy a stove; that the appellant was one of the men that came in the store; (he pointed the appellant out in the courtroom); that appellant had been in the store a few days before September 8, 1975, about buying a stove; that on September 8, 1975, when they came in he started back to the office to write the sales contract; that the appellant was behind him and as he went into the office he was struck on the head with a bottle; that he was struck more than once with a bottle; that he had a knife in his hand and turned and cut one of them with the knife; that they continued to hit him and knocked him down; that one of them got his wallet and some money out of his pocket; that they got about $104.00 or $105.00; that one of them held him down and the other pulled the cash register onto the floor and knocked its drawer open; that they broke several of his ribs; that he was not knocked completely out; that when he turned and cut at one of them in the beginning of the trouble he heard one of the say, “I’m cut” and that after they got the money they left.
This witness called the police and they came to the store and the witness went to the hospital.
The witness further testified, in substance, that while he was in the hospital he was shown by the police eight pictures and that state’s exhibits 1 to 8 appear to be the pictures shown to him; (he picked four pictures from said exhibits and said they were the ones he picked out at the hospital); that exhibits no. 2, 3, 7 and 8 were the four pictures he picked out; that two of the pictures were of appellant and two pictures were of the other man that came into his store at the time he was robbed; and that he told the police that two black men, one taller than the other, robbed him and he thought he cut one of them.
Herman M. Sims, a Montgomery policeman, testified, in substance, that on September 8, 1975, about 3:00 P. M. he investigated a robbery at Johns Furniture Company; that the office was in disarray; that Johns was there and had been hurt and was bloody; that he talked to Johns very little; that he put on the radio what little description of the suspects he could get; and that other officers completed the investigation.
Detective M. R. Holt testified, in substance, that on September 8,1975, he investigated a robbery at Johns Furniture Company; that when he arrived at the store Johns was being taken to the hospital; that he went to the hospital later that day and saw Willie James Brown; that before he went out there he had reason to believe one of the robbers had been cut; that after he talked with Brown he went to Magnolia Graham’s home and saw a tub with bloody water in it; that Brown had been cut; and that we later located John Mottenon but he (the witness) was not present at the time Mottenon was located.
Mary Rogers testified, in substance, that she knew John Mottenon who was sitting in the courtroom; that she had known him since she started going with Lewis (Willie James Brown, alias Lewis Murrey); that on September 8, 1975, at about 3:00 to 4:00 P.M. she went to Magnolia Graham’s home; that when she got there Magnolia, John Mottenon, and Lewis were there; that Lewis was cut on his right side; that John Mottenon said, “He was robbing an old honky and the old honky cut him”; that Mottenon was talking about how Lewis got cut; and that they all took Lewis to the hospital.
This witness further testified that on the morning of the day she was testifying she was sitting in the hallway of the courthouse and two deputies brought John Mottenon down the hall and Mottenon said to her, “You can go in there and act a fool if you want to”.
The appellant’s objection to this testimony was overruled.
*20 Sidney Williams, a police detective, testified in substance, that on September 9, 1975, he went to the hospital and talked with Mr. Johns and showed him eight photographs; that state’s exhibits no. 1 to 8 are the photographs he showed Mr. Johns; that two of the exhibits were pictures of Willie James Brown and two were of appellant; that he initialed the photographs selected by Johns of the appellant and Brown; that a couple of days after he saw Johns in the hospital he and other policemen went to Magnolia Graham’s home; that he covered the south end and reached the corner of the apartment and saw the appellant come out the back door and when he saw me he ran; and that we followed him and caught him in about five or ten minutes. The defendant’s objection to this evidence was overruled. This witness further testified, over appellant’s objection, that after they caught appellant they went back to Magnolia Graham’s home and saw three suitcases packed with men’s clothing and shoes.
On cross examination he testified that the pictures he showed Johns at the hospital were of people, some of whom were of the same head size and some were not; with a weight range of 140 to 170 pounds and with a height range from 5'4" to under 6 feet; that the height range had a difference of 4 or 5 inches; that persons in the pictures were not all dressed alike; and that Magnolia allowed them to go into the house and see the suitcases.
In his argument to the jury the Assistant District Attorney stated, “The Defendant, you have seen and observed his demeanor here today”. The appellant objected and the court stated to the jury, “Disregard that last statement, ladies and gentlemen of the jury”. The court further stated to the jury, “I have already instructed the jury. Disregard that last statement of the District Attorney, don’t consider it in any way”.
The appellant contends on this appeal that the in-court identification of the appellant was not sufficiently independent of outside sources; and that it was in fact tainted by the action of some of the law enforcement officers or officer in showing pictures of the appellant, before his arrest, to the victim of the robbery who made an in-court identification of the appellant as being one of the persons that robbed him.
In Johnson v. State, 54 Ala.App. 581, 310 So.2d 504, it is stated:
“In this case it appears that each of the State witnesses referred to were shown several photographs, not less than ten being shown to the witnesses and the appellant’s picture was identified from the entire number, in each instance, by two of the witnesses. It does appear that on the day of trial or the day before that one or more witnesses also saw a photograph of the appellant which was attached to the file folder of the assistant district attorney.
But under the testimony as a whole we think that holding in the case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, that the presentation to the witness of several photographs including one of the defendant, if conducted fairly is not so suggestive as to influence the witness in his choice. This principle has been recognized and followed in the case of Ross v. State, 46 Ala.App. 88, 238 So.2d 887 and Williams v. State, 51 Ala.App. 1, 282 So.2d 349.”
In the case before us the victim was shown eight photographs, two of which were pictures of the appellant. The person photographed in two of the pictures had on the same shirt, but there is no evidence that it was the shirt worn during the robbery. Furthermore, up to that time the police did not have any description of the clothing worn by either of the robbers and certainly there could not have been any effort on the part of the police to make a suggestion by that means of either person engaged in the robbery. It is clearly shown that the police had not seen the appellant at any time between the robbery and the time the photographs were shown to the witness. We have viewed the pictures shown to the witness by the police and we do not find them to be suggestive as to robber’s identity. We find that the showing of the pictures to *21 the victim was fairly conducted and that it did not taint the in-court identification.
We also hold that the victim of the robbery had an independent source of identification. Those persons that committed the robbery in question had been in the store a few days before asking about the purchase of the same stove. The witness, the victim, of the robbery recognized them as having been in the store before when they came in the store on the date of the robbery. He saw the robbers on two occasions for a period of time and he pointed the appellant out in open court as being one of them without hesitation. Unlike Johnson v. State, supra, the evidence in this case does not show that the victim of the robbery had seen a picture of appellant on the day of the trial before he testified.
We do not find error in this case with respect to the showing of the photographs to the victim or his selection of the appellant’s picture as one of the persons that robbed him or his in-court identification of appellant.
The appellant further contends that the testimony of Mary Rogers as to the statement made to her by the appellant in the hall of the courthouse on the day of the trial, to-wit: “You can go in there and act a fool if you want to”, was inadmissible.
Underhill’s Criminal Evidence, Fourth Edition, Section 257, page 484, states:
“Evidence to show that the accused has attempted to fabricate or procure false evidence, to destroy or suppress certain evidence against himself, to corrupt witnesses for the state, procure their absence by threats of violence or otherwise, is always admissible as showing a consciousness of guilt * *.”
In Robinson v. State, 43 Ala.App. 111, 180 So.2d 282, states rule of law with reference to such evidence in this manner:
“Any act proving or tending to prove an effort or desire on the part of the defendant to obliterate evidence of a crime is relevant, for from such fact, if unexplained, the jury may justly infer consciousness of guilt.”
There is not error in the admission of the evidence complained of, for the statement by the defendant to said witness was in the nature of a threat and could well have been intended as such. It was an effort to intimidate the witness and suppress her testimony. Such threats and efforts may be shown, and if left unexplained, the jury may justly infer a consciousness of guilt on the part of the defendant.
We come now to the contention of the appellant that the argument of the Assistant District Attorney, herein above set out, constitutes reversible error. With that contention we do not agree.
The appellant on arraignment entered a plea of not guilty and not guilty by reason of insanity. We do not find that his plea of not guilty by reason of insanity was withdrawn. While the appellant did not introduce testimony of insanity, the record does disclose that he put on quite an act before the court, the jury at the time being out of the courtroom, as to whether he wanted to testify. Had he done so in the presence of the jury the comment of the Assistant District Attorney would have been proper for his actions would have constituted an effort on his part to make evidence for himself by demeanor before the jury indicative that he was insane. Brothers v. State, 236 Ala. 448, 183 So. 433.
Be that as it may, the comment of the Assistant District Attorney was not so damaging that its effect could not be eradicated. The trial court’s prompt action in sustaining the objection to the comment and its instruction to the jury to “disregard the statement of the district attorney, don’t consider it in any way” was sufficient to eradicate any harmful effect. Willingham v. State, 261 Ala. 454, 74 So.2d 241.
We have searched the record and have not found any error which would justify a reversal.
It is therefore ordered and adjudged by this court that the final judgment of the court below be and is affirmed.
The foregoing opinion was prepared by the Honorable L. S. Moore, a retired Circuit *22 Judge, serving as a Judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
AFFIRMED.
All Judges concur.