213 So.2d 645

**Willie SEALS, Jr.**

**v.**

**STATE of Alabama.**

**1 Div. 209–A.**

Supreme Court of Alabama.

Aug. 15, 1968.

Rehearing Denied Sept. 12, 1968.

Vernon Z. Crawford, Mobile, Chas. S. Conley, Montgomery, Arthur J. Lesemann, Hackensack, N. J., and Martin Bradley, Jr., Buffalo, N. Y., for appellant.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for State.

LAWSON, Justice.

Willie Seals, the appellant, was first indicted for rape on October 24, 1958. He pleaded not guilty. Upon his trial on that indictment the jury found him guilty and imposed the death penalty. Judgment and sentence were in accord with the verdict.

On June 2, 1960, we affirmed the judgment of the trial court. We denied application for rehearing on August 18, 1960.—Seals v. State, 271 Ala. 142, 122 So.2d 513. Seals did not seek a review of our action by the Supreme Court of the United States.

■ However, on November 1, 1960, Seals filed in this court his petition to be permitted to file a petition for writ of error coram nobis in the Circuit Court of Mobile. That was the proper procedure at the time, since we had affirmed the judgment of the trial court, but an application to this court is no longer necessary. Under Supreme Court Rule 50, adopted December 6, 1965, "Petitions for writs of error coram nobis shall be filed in the trial court without first applying for and receiving permission of the Supreme Court; * * *"

Among the grounds of the petition filed here by Seals on November 1, 1960, were several which were based on the theory that the petitioner, Seals, was a member of the Negro race, and that members of such race had been intentionally and systematically excluded from both the grand jury and petit jury solely on account of their race and color. The petitioner did not contend that that question had been raised at his trial. We denied the petition on January 26, 1961. —Ex parte Seals, 271 Ala. 622, 126 So.2d 474.

Thereafter Seals filed in the Supreme Court of the United States a petition for writ of certiorari to review our action in Ex parte Seals, 271 Ala. 622, 126 So.2d 474. On June 12, 1961, the Supreme Court of the United States denied Seals' petition for writ of certiorari "without prejudice to an application for a writ of habeas corpus in the appropriate United States District Court." —Seals v. Alabama, 366 U.S. 954, 81 S.Ct. 1909, 6 L.Ed.2d 1246.

Pursuant to the suggestion of the Supreme Court of the United States, Seals made application for writ of habeas corpus to the United States District Court for the Middle District of Alabama. Judge Seybourn H. Lynne, the Presiding Judge of the United States District Court for the North-ern District of Alabama, was apparently assigned to hear the application. He entered a judgment denying the application, from which judgment Seals appealed to the United States Court of Appeals, Fifth Circuit.

On May 30, 1962, (rehearing denied June 29, 1962), the said United States Court of Appeals, Fifth Circuit, in United States of America ex rel. Willie Seals, Jr., Appellant v. Martin J. Wiman, Warden, Kilby Prison, Montgomery, Alabama, Appellee, 304 F.2d 53 (hereinafter referred to as United States. v. Wiman), rendered an opinion which concludes as follows:

"Under the facts of this case, with all deference to the opinion of the Supreme Court of Alabama, we cannot agree that Seals waived his constitutional rights by failing to object upon his trial and must accordingly be executed. To the contrary, we must hold that the objection both to the grand jury and to the petit jury on the ground that Negroes were systematically excluded is open for consideration on the habeas corpus proceeding.

"Upon the present record we hold further that Negroes were systematically excluded both from the grand jury which indicted Seals and from the petit jury which convicted him; and, hence, that Seals' judgment of conviction is unconstitutional, subject to collateral attack, and is declared to be void and of no effect.

"Nonetheless, Seals is now legally detained upon his commitment to await the action of another grand jury upon the crime of rape with which he is charged. Seals is, of course, entitled to be tried within a reasonable time, and the district court should retain jurisdiction to meet the unlikely event that further orders and judgments may be necessary or proper. This Court expresses its present opinion that a period of eight months from and after the entry of this judgment or its. final test by certiorari, or otherwise, will be sufficient to afford the State of Ala-

bama an opportunity to take the necessary steps to reindict and retry Seals.

"Any such reindictment must of course be by a grand jury from which Negroes have not been systematically excluded, and any such retrial must be before a jury from which Negroes have not been systematically excluded, or before some court or tribunal so constituted as not to violate Seals' constitutional rights. For the guidance of the parties, the Court expresses the present opinion that if Seals is reindicted and retried and if any question should arise as to the legality or constitutionality of such indictment or trial, that should be decided not upon the present petition but in the regular course by the Courts of the State of Alabama, subject to possible review by the Supreme Court of the United States.

"The judgment of the district court is reversed, judgment here rendered in accordance with the holdings of this opinion, and the cause remanded for any further proceedings which may be found necessary or proper.

"Reversed, rendered and remanded." (304 F.2d 69–70)

Seals, or his lawyers, were either not content with the victory which they had won in the United States Court of Appeals, or were playing for time, because Seals filed in the Supreme Court of the United States a petition for writ of certiorari to review the opinion and judgment of the United States Court of Appeals. Certiorari was denied by the Supreme Court of the United States on February 18, 1963.—Seals v. Wiman, Warden, 372 U.S. 924, 83 S.Ct. 741, 9 L.Ed.2d 729.

On March 28, 1963, Seals was reindicted by another grand jury of Mobile County for the same offense, the rape of "Mary Ann Hickey, a woman, now named Mary Ann Shaw."

On May 6, 1963, five written motions were filed on behalf of Seals to quash that indictment.

On September 20, 1963, there was filed on behalf of Seals a motion praying for an order directed to the Board of Jury Commissioners of Mobile County to allow Seals' attorneys to inspect and make copies of certain documents in the possession of said Board. This motion was granted on September 27, 1963.

On November 18, 1963, another written motion to quash the indictment was filed on behalf of Seals. An oral motion to quash the indictment was made on behalf of Seals in open court on November 20, 1963. After extended hearings, all of the aforementioned motions to quash the indictment were denied by the trial court on December 19, 1963.

On January 3, 1964, in the presence of one of his attorneys, Seals entered a plea of not guilty. The trial of his case was set for January 27, 1964. On that date there was filed on behalf of Seals a written motion to quash the trial venire and an oral motion was made on behalf of Seals in open court on that date to quash the trial venire. Both of said motions were denied on January 27, 1964.

On January 29, 1964, after the trial of the cause had begun, there was filed on behalf of Seals another written motion to quash the venire and that Seals be granted "the right to examine individually on voir dire each prospective juror, by questions addressed to them by defense counsel, out of the presence of other prospective jurors." Seals also sought in the motion filed on January 29 to have suppressed "all evidence illegally obtained, after the illegal arrest, and during the period of the illegal detention of the defendant." This motion was denied on the day it was filed.

The trial, which began on January 27, 1964, was concluded on February 1, 1964. A jury found Seals guilty as charged in the indictment and his punishment was fixed at life imprisonment. Judgment and sentence were in accord with the verdict of the jury.

On March 2, 1964, Seals gave written notice of appeal to this court and on March 10, 1964, he filed a petition requesting a

free transcript of the proceedings in the trial court on the ground that he was an indigent. Following a hearing, the trial court on March 27, 1964, rendered a judgment denying Seals' motion for a free transcript. From that judgment Seals on April 6, 1964, appealed to this court. On June 18, 1964, we affirmed the judgment of the trial court denying the free transcript.—Seals v. State of Alabama, 276 Ala. 654, 165 So.2d 742. Seals then filed in the Supreme Court of the United States a motion for leave to proceed in *forma pauperis* and a petition for writ of certiorari to review and revise our opinion and judgment in Seals v. State of Alabama, 276 Ala. 654, 165 So.2d 742.

On March 8, 1965, the Supreme Court of the United States rendered an opinion as follows:

"Per Curiam.

"The motion for leave to proceed in *forma pauperis* and the petition for a writ of certiorari are granted. The Court is of the view that on the record the petitioner is an indigent. Therefore, the judgment must be reversed. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891." (380 U.S. 254, 85 S.Ct. 943, 13 L.Ed.2d 818.)

On April 6, 1965, this court entered an order in the Seals case which reads as follows:

"The Supreme Court of the United States having heretofore granted Certiorari and reversed the decision of this Court on March 8, 1965, and this Court having received the United States Supreme Court Mandate on April 5, 1965;

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this cause be reversed to the Circuit Court of Mobile County, Alabama with direction that said Circuit Court permit Willie Seals, Jr., to prosecute his appeal in forma pauperis from that certain judgment of conviction dated February 1, 1964 (case no. 8645) and to furnish to Willie Seals, Jr., a full, true and complete record, including transcript of testimony of said trial.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Clerk of the Circuit Court file the record of appeal, in this matter, with the Clerk of the Supreme Court within sixty (60) days from the date of this order, unless said time be extended by this court for good cause."

On May 31, 1965, the State of Alabama by and through its Attorney General moved this court to extend the time for filing the transcript of the record in this court from June 5, 1965, to and including October 3, 1965, on the ground that the said transcript would consist of approximately twelve hundred pages and that the court reporter was unable to complete the transcript of the evidence within the time previously fixed by this court.

On June 7, 1965, this court entered an order in the Seals case, which reads as follows: "IT IS ORDERED, on motion of the State of Alabama, that the time for filing the transcript, in the Supreme Court of Alabama, is hereby extended an additional 120 days from June 5, 1965 to and including October 4, 1965."

The court reporter filed the transcript of the testimony with the Clerk of the Circuit Court of Mobile County on September 27, 1965, and no objections or exceptions were taken thereto. The transcript of the record which, of course, includes a transcript of the testimony, was not filed in this court until November 2, 1965.

The cause was submitted here on January 20, 1966, on motions and on merits.

### Motion of State to "Strike Brief of Appellant"

This motion filed on the day the cause was submitted in this court based on the following grounds:

"1. Said brief is not prepared in conformity with the provisions of Rule 8(9) of the Revised Rules of the Supreme Court of Alabama, effective June 1, 1965.

"2. On the Propositions of Law III and X B the four authorities most strongly relied upon are not listed first and written in capital letters as required by said Rule 8(9)."

In that part of the State's brief filed in support of the motion presently under consideration it is said:

"The brief filed on behalf of appellant is typewritten on legal cap paper and is bound at the top rather than on the side. This format and method of binding are clearly contrary to Rule 8(9).

"Furthermore, under Propositions of Law III and X B, the Appellant lists 8 and 7 authorities respectively without listing first or capitalizing the four authorities most strongly relied on, contrary to Rule 8(9)."

■ The brief filed on behalf of appellant does fail to comply with Supreme Court Rule 8(9) in the respects indicated by the State, but it does not follow that appellant's brief should be stricken. We frankly cannot understand why the State filed the motion to strike appellant's brief. If that motion were granted, it would be without benefit to the State. The filing of a brief is not essential to our consideration of an appeal by a defendant in a criminal case.— Higginbotham v. State, 262 Ala. 236, 78 So.2d 637. True, the case last cited was decided prior to the recent court decisions and statutory enactments which require the appellant to be represented by counsel on appeals of this nature. But the fact remains that we are admonished by the provisions of § 389, Title 15, Code 1940, to "consider all questions apparent on the record or reserved by bill of exceptions [transcript of the evidence], and must render such judgment as the law demands."

Appellant's brief, although it fails to comply with the requirements of Supreme Court Rule 8(9) in the respects indicated, deals with some of the numerous rulings made by the trial court which were adverse to the appellant and in some instances

authorities are cited in support of the argument. But the State's brief, aside from the argument made in support of its motions to strike, deals with only one of the grounds contained in the several motions to quash the indictment, the jury question. None of the other numerous rulings of the trial court are even mentioned in the State's brief. This has placed a terrific burden on this court in view of the provisions of § 389, Title 15, supra, quoted above.

■ Motion to strike appellant's brief is denied.

Motion of State "to Strike Transcript of the Evidence and to Strike the Entire Record and to Dismiss Appeal"

This motion was also filed on the day the cause was submitted in this court.

In so far as the time for filing the transcript of the evidence by the court reporter with the circuit clerk and the time for the filing of the transcript of the record by the circuit clerk in this court, this case is not governed by any previous decisions of this court or the Court of Appeals and nothing said hereinafter is to be understood as a repudiation of any previous decision by either court. In regard to the motion presently under consideration, we are faced with a situation with which neither of our appellate courts has heretofore been confronted.

■ The appeal by Seals to this court from the trial court's order denying his petition for a free transcript made inapplicable the provisions of § 2 of Act 97, approved February 9, 1956, Acts of Alabama, Special Session 1956, p. 143, which in pertinent part reads: "The court reporter's certified transcript shall be filed with the clerk within sixty (60) days from the date of the taking of the appeal or within sixty days from the date of the court's ruling on the motion for a new trial, whichever date is later; * * *" See § 827(1), Title 7, 1958 Recompiled Code of Alabama. Likewise, the taking of that appeal made inapplicable the following provision of Supreme Court Rule 37: "Where bills of exceptions have

been abolished, the transcript of the record shall be filed in this court within sixty days after the transcript of the evidence has been established in the court below." The sixty-day period allowed by Supreme Court Rule 37 for filing the transcript of the record begins to run from the date the transcript of the evidence is filed in the circuit court, there being no objections filed to the transcript of the evidence.—Hornbuckle v. Alabama, 268 Ala. 347, 105 So.2d 864.

Our order entered on April 6, 1965, after we had received the mandate from the Supreme Court of the United States reversing our holding in Seals v. Alabama, 276 Ala. 654, 165 So.2d 742, was altogther unrealistic in so far as we ordered the Clerk of the Circuit Court of Mobile County to file "the record of appeal" with the Clerk of this court within sixty days from April 6. True, in that order we retained the right to extend the time for filing the "record of appeal" in this court "for good cause."

The State by and through its Attorney General became aware of the fact that the "record of appeal" could not be filed in this court within sixty days from April 6, 1965, and commendably filed in this court on May 31, 1965, a "motion to extend time for filing transcript of record on appeal in Supreme Court." That motion read in part as follows:

"2. Said 60 day period will expire on, to-wit, June 5, 1965.

"3. Movant is informed and believes, and upon such information avers as a fact that Miss Nonie Urquhart was the court reporter for the entire proceedings of said trial held before Judge Bolling in said Circuit Court of Mobile County, and that said court reporter is busily engaged in the trial of cases at present and will be unable to complete the transcript in this case within the time fixed by this Honorable Court.

"4. That movant is informed and believes and avers an extension of 120 days from June 5, 1965 is a reasonable time within which said court reporter can complete said transcript, file it with the Clerk of the Circuit Court of Mobile County, and then have said transcript forwarded to the Supreme Court of Alabama.

"5. That movant is informed and believes and avers that said transcript will consist of approximately 1200 pages."

As heretofore pointed out, we granted the State's motion and entered the order of June 7, 1965, wherein we provided "that the time for filing the transcript, in the Supreme Court of Alabama, is hereby extended an additional 120 days from June 5, 1965 to and including October 4, 1965."

■ It is to be noted that in our order of June 7, 1965, we did not spell out the time within which the court reporter should file the transcript of the evidence with the circuit clerk. The record contains more than one thousand pages and most of it is comprised of the court reporter's transcript of the evidence. She did file it within the 120-day extension period on, to wit, September 27, 1965, thus leaving the circuit clerk only seven days within which to make up and file in this court a transcript of the record. We take judicial notice of the fact that this did not give the clerk adequate time to prepare and file the transcript of the record in this court. True, on the date on which the court reporter filed the transcript of the evidence in the office of the circuit clerk, she executed a certificate wherein she certified in part that she had on that day notified the attorneys of record for both the plaintiff and the defendant of the filing of the transcript of the evidence in the Circuit Court of Mobile County, Alabama. It might be said that it was then incumbent upon counsel for the appellant to have come to this court seeking an extension of time for the filing of the transcript of the record here. Under our orders we had, in effect, deprived the trial court from granting extensions.

■■ We do not recede from the position so often stated in our opinions to the effect that it is the duty of counsel for ap-

pellants to see that records pertaining to appeals are timely filed. However, in view of the unrealistic and incomplete orders which this court issued relative to the filing of the transcript of the record in this court and the fact that it was the Attorney General who took the initiative in seeking an extension of time for the filing of the transcript of the record in this court, we entertain the view that it would be wrong and unjust to grant the State's motion here under consideration. Consequently, we deny the motion of the State "to strike transcript of the evidence and to strike the entire record and to dismiss appeal."

The appellant, defendant below, insists in brief that the trial court erred to a reversal in overruling his motions to quash the indictment. The grounds of the motions to quash the indictment may be summarized as follows:

(1) That the defendant was denied his right to a preliminary examination and hearing before a lawful civil magistrate as provided by the Constitution and laws of Alabama and by the Constitution of the United States; (2) that the defendant was illegally seized, arrested and imprisoned by police officers without a warrant or a reasonable or probable cause; (3) that the arresting officers failed and refused to to inform the defendant of their authority to arrest him and of the cause of the arrest as required by the Constitution and laws of the State of Alabama and by the federal Constitution; (4) that at all times "during the life of the grand jury" which returned the indictment against the defendant state, county and city authorities enforced and pursued a practice, custom or usage of requiring and compelling segregation based on race or color in the courtrooms, restroom facilities and all other facilities in the courthouse of Mobile County, in violation of the Fourteenth Amendment to the Constitution of the United States; (5) that pursuant to practice, custom and usage enforced and pursued by authorities of the city and county of Mobile and the State of Alabama, each and every aspect of the judicial sys-

tem of the city and county of Mobile and State of Alabama were at all times during the "life of the grand jury which returned this indictment" totally and absolutely segregated by reason of race and "in particular members of the Negro race were and are systematically excluded from serving in any administrative, clerical or judicial position including all judicial personnel, clerks of the court, guards and bailiffs"; (6) that "Title ——, Section ——, of the laws of Alabama upon which said indictment rests on its face and as applied is void and illegal in that it violates the 8th, 13th and 14th Amendments to the Constitution of the United States" in that it is designed and does operate so as to discriminate in the imposition of sentence for the offense of rape on the grounds of race and color; (7) that "the statute" on its face and as applied "by sanctioning the imposition of the death penalty for the offense of rape violates the prohibition against cruel and unusual punishment contained in the 8th and incorporated in the 14th Amendment to the Constitution of the United States"; (8) that Negroes were systematically excluded from the jury roll from which the grand jury was drawn which returned the indictment against the defendant.

We are aware of no case, and none has been cited, which holds that an indictment is subject to being quashed for the reasons set forth in the first seven grounds of the motions to quash, as we have summarized them above.

But we will comment briefly on those grounds.

In regard to Ground (1), we said in Aaron v. State, 271 Ala. 70, 76, 122 So.2d 360, 365:

"We are aware of no state or federal decision which holds that an indictment by a grand jury of a state is subject to being quashed because the person indicted was held incommunicado after his arrest and was not taken before a committing magistrate promptly after his arrest by law enforcement officers."

Moreover, the trial court found from the evidence "that the request of the defendant through his attorney for a mental examination prevented the State from proceeding with a preliminary hearing." In this case Seals was not held incommunicado and it is our understanding that the Supreme Court of the United States has not, as yet, made its holdings in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed. 2d 1479, and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, applicable to the states.—Hutto v. State, 278 Ala. 416, 178 So.2d 810, and Davis v. State, 42 Ala.App. 374, 165 So.2d 918. Those cases did not relate to validity of indictments.

■ Pertinent to Ground (2) is the observation we made in Aaron v. State, supra, as follows: "Under the provisions of § 154, Title 15, Code 1940, an officer may arrest any person for a felony, although not committed in his presence, if he has reasonable cause to believe that the person arrested committed the offense." The evidence shows that appellant was arrested for a felony and, in our opinion, shows that the arresting officers had reasonable cause to believe that he was one of the persons who committed the offense.

■ In regard to Ground (3), the trial court found and, in our opinion, the evidence supports such a finding, that an arresting officer advised appellant of the exact offense with which he was being charged, and that he was so advised when he was "placed on the docket of the Mobile City Jail on June 19, 1958 * * *" Seals, himself, admitted that he was advised by the officers who arrested him that he was being arrested for the crime of rape. In disposing of this ground in this means we do not want to be understood as holding that the indictment would be invalid if Seals had not been so informed.

■ As regards Grounds (4) and (5), we do not think the facts alleged therein would justify an order quashing the indictment. No case is cited which so holds and we are unaware of any such case.

■ We will assume that Grounds (6) and (7) were designed to attack the constitutionality of Title 14, § 395, Code 1940, which reads: "Any person who is guilty of the crime of rape shall, on conviction, be punished, at the discretion of the jury, by death or imprisonment in the penitentiary for not less than ten years." There is no mention of race or color in the statute and the averments of Ground (6) to the effect that said statute was designed "so as to discriminate in the imposition of the sentence for the offense of rape on the grounds of race and color" are not substantiated, nor does the evidence show that § 395, supra, has been so applied. Insofar as we are advised, the Supreme Court of the United States has not up to the present time held any state statute unconstitutional simply on the ground that it authorized the imposition of the death penalty. See Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided on June 3, 1968, and Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, also decided on June 3, 1968.

We come now to a consideration of Ground (8) which, as we have already indicated, attacked the indictment on the ground that Negroes were systematically excluded from jury roll from which the grand jury was drawn which indicted Seals.

■ It is well settled that a defendant in a criminal case is denied the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution if he is indicted by a grand jury, or tried by a petit jury, from which members of his race have been excluded because of their race. Many decisions of the Supreme Court of the United States and of this court are cited in Swain v. State, 275 Ala. 508, 156 So.2d 368, and need not be repeated here. Swain v. State, supra, was affirmed by the Supreme Court of the United States.—Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

The holding in United States v. Wiman, supra, that Negroes had been systematically

excluded from the grand jury which indicted Seals in 1958 and from the petit jury which convicted him, as we understand the opinion in that case, was grounded on the fact that the 1950 census showed that 31.7% of the male population of Mobile County between the ages of twenty-one and sixty-five years were non-white and that less than 2% of the persons on the jury rolls of the county were Negroes and on a finding that the low percentage was due to a failure of the Jury Commissioners to adhere in any substantial degree to the requirements of the laws of this state relative to the selection of names of persons to go on the jury roll.

The indictment here under attack was returned by a grand jury whose names appeared on a jury roll compiled in September, 1962. According to the 1960 census, there were 53,183 white male citizens between twenty-one and sixty-five years of age and 20,807 non-white male citizens between those ages in Mobile County, a total of 73,990. The jury roll compiled in September, 1962, contained only 10,476 names. Of this number slightly more than 3% were Negroes. So the conclusion is inescapable that there were wide disproportions between the number of Negro male citizens in Mobile County between the ages of twenty-one and sixty-five and the number of names of Negroes placed on the 1962–63 jury roll.

In several recent federal court cases it has been held that such proof, without more, requires an inference of systematic exclusion on racial grounds and in the absence of some satisfactory explanation is sufficient to show a denial of the equal protection of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.—United States v. Wiman, supra; White v. Crook, D.C., 251 F.Supp. 401; Mitchell v. Johnson, D.C., 250 F.Supp. 117. See Turner v. Spencer, D.C., 261 F.Supp. 542.

So we come to the question as to whether a satisfactory explanation for the small percentage of names of Negroes on the 1962–63 jury roll was shown in this case.

, As shown in the opinion in United States v. Wiman, supra, in 1960 after the issue of jury discrimination was raised for the first time in a criminal trial in Mobile County, the Jury Commissioners began to take steps to secure the names of qualified Negroes to be placed on the jury roll. The evidence in this case shows such efforts were extended in connection with the preparation of the jury roll compiled in September, 1962. The evidence shows that the Jury Commissioners contacted numerous leading Negro citizens who were requested to furnish names of Negroes to be considered for jury service. Various Negro organizations and clubs were contacted. As a result, 14.3% of the new names added to the jury roll between September 30, 1961, and September 30, 1962, were names of Negroes.

This, we think, shows a determined effort on the part of the Jury Commissioners to include qualified Negroes on the jury roll from which the grand jury was drawn which returned the indictment presently under consideration. The reason why there was such a wide disproportion between the number of Negroes on the 1962–1963 jury roll and the number of Negro male citizens between twenty-one and sixty-five years of age is that the Jury Commissioners followed the practice of merely adding new names to the existing rolls. We think it important to note that in United States v. Wiman, supra, the Court did not order the Jury Commissioners of Mobile County to abandon use of the jury roll then extant, as was done in White v. Crook, supra; Mitchell v. Johnson, supra; and Turner v. Spencer, supra. We think it reasonable to assume that the Court in United States v. Wiman, supra, recognized that a complete new jury roll for populous Mobile County could not be properly prepared in the time allotted for the reindictment and retrial of Seals. The cases last cited above dealt with jury commissions in counties of the state having a very small population.

Although the federal courts do not seem to give too much weight to these circumstances, we note that on the grand jury

which indicted Seals in 1963 there were three members of the Negro race and there were five Negroes on the trial venire. There was also testimony to the effect that during the period from May 20, 1962, until March 28, 1963, the average jury venire in Mobile County contained seventy-two to seventy-five persons and that each week there were from four to six to ten Negroes on such venire.

■ We are not willing to say that the record before us shows that Negroes were systematically excluded from the jury roll from which was drawn the grand jury which indicted Seals in March of 1963.

We have not based our holding on Swain v. Alabama, supra, for the evidence in that case showed that Negro males over twenty-one constituted 26% of all males in Talladega County in that age group and that ten to fifteen percent of the grand and petit jury panels drawn from the jury box of that county after 1953 were Negroes and in one instance the percentage of Negroes was as high as 23%.

In brief filed here on behalf of appellant it is said, in substance, that § 52, Title 30, Code 1940, is unconstitutional in that it purports to fix the qualifications of jurors in subjective terms of reputation for honesty, intelligence, good character, integrity and sound judgment; that those terms are not only undefined in the statute, "but in fact they are undefinable except in terms of subjective judgments made by each Jury Commissioner on standards and basis devised by himself. The statute contains absolutely no objective, measurable standard for the qualification of jurors and grants unchannelled discretion to the Jury Commissioners."

Section 52, Title 30, supra, has nothing to do with the selection of persons to go on the jury rolls.

At the time the indictment here under consideration was returned, the qualification of jurors and the duty of the Jury Commissioners to place them on the jury roll were set forth in § 21, Title 30, Code

1940, which was set out in full in United States v. Wiman, supra, and will not be repeated here.

We have not been able to find any ground of any of the written motions to quash which took the point that § 21, Title 30, Code 1940, is unconstitutional. But we are unwilling to say that such a ground was not included among the numerous oral motions to quash which were made throughout the course of the trial and we are unwilling to say, in view of United States v. Wiman, supra, that a motion to quash an indictment has to be made at any certain time or that it has to be made in writing, although under our decisions it should be in writing.

■ The jury rolls of several of the counties of this state have been under attack for many years. Section 21, Title 30, supra, has been before the Supreme Court of the United States on numerous occasions and in so far as we are aware it has never been held to be unconstitutional on its face.

The cases cited by appellant in support of its argument presently under consideration do not deal with statutes fixing the qualifications of jurors. See Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L. Ed.2d 302; Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098.

We hold that the trial court did not err in overruling the several motions to quash the indictment.

The record contains two written motions to quash the trial venire and there were one or more oral motions to like effect made during the course of the trial.

In brief filed here on behalf of appellant appears the following argument:

"Prior to trial defendant also moved to strike the petit jury venire drawn for his trial on the grounds that Negroes had been systematically excluded from that venire and from the jury roll from which it had been drawn."

Several other grounds of the motion to quash the venire were included in the mo-

tion to quash the indictment with which we have already dealt. We hold all those grounds to be without merit. The motion to quash the venire contains the following ground: "That the venire herein be quashed for the reasons that it included the names of more than 100 jurors contrary to Title 30, Section 63, of the Code of Alabama, 1940, as amended."

█ In regard to that ground, we think it sufficient to say that the selecting and impaneling of juries in Mobile County was controlled by the provisions of Act 366, approved November 6, 1959, Acts of Alabama 1959, Vol. 2, p. 955, as amended by Act 259, approved September 15, 1961, Acts of Alabama 1961, Vol. II, p. 2276.

During the course of the trial one of the lawyers representing the appellant, defendant below, said to the court: "* * * we would like for the record to show that there were five Negroes on the venire, that each one was stricken by the State." After the Solicitor [District Attorney] objected, the trial court stated: "The Court denies the motion and states for the record that under the Alabama law the defendant has twice as many challenges as the State, and in this particular case the defendant had 22 challenges, the State had 11, and the court does not intend to allow any evidence from either side as to why they struck any jury [sic] and with that explanation the Motion is denied."

█ Reversible error is not made to appear in this ruling of the trial court.— Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

█ The court did not err in overruling a motion of an attorney for the defendant below that he be permitted "to examine each prospective juror outside the presence of the other jurors." Jurors may be qualified on voir dire in groups at the discretion of the trial court. See Burns v. State, 226 Ala. 117, 145 So. 436; Aaron v. State, 273 Ala. 337, 139 So.2d 309.

The trial court advised counsel that in the examination of jurors it was going to be "bound" by the provisions of § 52, Title 30, Code 1940, "which provides that either party shall have a right to examine jurors as to their qualifications, interest or bias which would affect the case and shall have the right under the direction of the court to examine said jurors as to any matter that might tend to affect their verdict."

The trial court then stated that its "ruling that after it has concluded all matters which would be challenged [sic] for primary cause or would be matters for bias per se, the Court would entertain any further matters from either side so long as those matters are directed to the Court so that the examination may be under the direction of the Court, and any request by either side to examine any juror out of the presence of anyone else is denied."

There was no objection raised by counsel for appellant, defendant below, to the procedure as outlined by the trial court. We have said that § 52, Title 30, supra, does not empower the parties to require the court to put questions to the jury touching matters which might tend to affect their verdict. —Ballard v. State, 236 Ala. 541, 184 So. 260. But we have said that it is within the discretion of the trial judge as to whether he will question the venire of jurors as to matters which tend to show interest or bias not amounting to disqualification, whether or not he is requested by counsel to do so.—Beecher v. State, 280 Ala. 283, 193 So.2d 505, reversed by the Supreme Court of the United States on other grounds, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35. The trial court propounded to the prospective jurors, in groups, most of the questions which counsel for defendant requested it to do. See Aaron v. State, 273 Ala. 337, 139 So.2d 309.

█ However, the trial court declined to ask the prospective jurors whether they were members of the Ku Klux Klan or the White Citizens Council or of any secret organization. In so declining the trial court

said to the prospective jurors as follows: "The Court will sustain the objection in its present wording; but the Court at the risk of repetition, will ask each juror under his oath if you belong to any organization or are a member of any group or society which would prejudice you in your efforts to render a fair and impartial verdict in this case; if so, you should make that fact known at this time." No juror gave an affirmative answer to that question. Hence we hold reversible error does not appear in the court's action in refusing to inquire of the prospective jurors as to whether or not they were members of the Ku Klux Klan or the White Citizens Council or any secret organization.

■ We also hold that the trial court did not err to a reversal in refusing to sustain the challenges for cause made by appellant's counsel in regard to certain prospective jurors who said that they knew the Circuit Solicitor socially and belonged to such organizations as the Masonic Order and Country Club, of which organizations the Solicitor was a member.

■ Reversible error is not made to appear in connection with the court's action in sustaining the State's challenge for cause to those prospective jurors who replied in the affirmative when asked by the court whether or not they had a fixed opinion against capital punishment. Section 57, Title 30, Code 1940, reads as follows:

"On the trial for any offense which may be punished capitally, or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person has a fixed opinion against capital or penitentiary punishments, or thinks that a conviction should not be had on circumstantial evidence; which cause of challenge may be proved by the oath of the person, or by other evidence."

It is not necessary in this case for us to express an opinion as to whether or not the holding of the Supreme Court of the United States in Witherspoon v. State of Illinois, supra, would be controlling here if the jury had fixed Seals' punishment at death. In Bumper v. State of North Carolina, supra, the holding in Witherspoon was not to be applicable where the jury recommends a sentence of life imprisonment.

At the time of Witherspoon's trial, an Illinois statute provided:

"In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same."

In the opinion in the Witherspoon case, the court said: " * * * At the petitioner's trial, the prosecution eliminated nearly half the venire of prospective jurors by challenging, under the authority of this statute, any venireman who expressed qualms about capital punishment * * *" The opinion of the court in *Witherspoon* concludes:

" * * * Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.

"Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. The State of Illinois has stacked the deck against the petitioner. To execute this death sentence would deprive him of his life without due process of law."

The appellant contends that his "conviction should be reversed for failure of the State to prove his guilt beyond a reasonable doubt; and because the verdict on which the conviction was based is against the weight of the evidence."

The appellant, defendant below, did not request the general affirmative charge in the appropriate form and there was no motion for a new trial.

■ At the conclusion of the evidence counsel for the appellant did move for a dismissal of the indictment against appellant on the ground that the State had failed to carry the burden which the law required. We will consider that motion, in this criminal case, as being sufficient to raise for our consideration the sufficiency of the evidence to go to the jury.

We are not going to undertake to make a detailed recital of the evidence as it appears in the record before us inasmuch as it is in all material respects the same as that adduced on the first trial and the evidence in that trial is summarized in the opinion in Seals v. State, 271 Ala. 142, 122 So.2d 513, and in United States v. Wiman, 5 Cir., 304 F.2d 53. Of course, the testimony of some of the witnesses is not exactly in all respects identical with that which they gave on the first trial, which occurred approximately six years prior to the time the present case came on for trial, and some witnesses who testified on the first trial did not testify at the trial presently under review, and there were witnesses at the second trial who did not testify at the first trial, but the same basic factual question was present in both trials.

■ We think it sufficient to say that the evidence shows beyond peradventure that during the last few minutes of June 15, 1958, or during the early part of June 16, 1958, Mrs. Mary Ann Hickey, now Mrs. Mary Ann Shaw, was attacked by two Negro men and that she was raped. We are also clear to the conclusion that the evidence was for the jury to determine whether or not Willie Seals was one of the men who attacked and raped the then Mrs. Hickey. Actually, the State's case was based to a large extent on Mrs. Shaw's identification of Seals as one of the two men who raped her and the defendant's case was based in the main on his denial of guilt and his efforts to prove an alibi.

Appellant argues that "there was a real issue in this case as to whether the prosecutrix was in fact raped, or whether she was simply badly beaten," and that, therefore, the trial court erred in unduly restricting the cross-examination of State's witness Dr. Frank Johnson, who examined prosecutrix shortly after she reached the hospital and who, on direct examination, described her physical condition generally at that time, as well as the condition of her female organs. He also testified that live spermatozoa were found.

■ It is provided by a statute of this state that the right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. § 443, Title 7, Code 1940. But the extent of cross-examination is a matter addressed to the sound discretion of the trial court, not reviewable except for abuse. Bosarge v. State, 273 Ala. 329, 139 So.2d 302; Roberson v. United States, 5 Cir., 249 F.2d 737, 72 A.L.R.2d 434, cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715.

The cross-examination of Dr. Johnson takes up fifty-seven pages of this transcript and recross three pages. The trial court permitted defendant's counsel wide latitude and he was permitted to elicit all possible information concerning prosecutrix's physical condition prior to the time of the alleged rape that could have shed any light on the truthfulness of her statement that she was, in fact, raped shortly before Dr. Johnson examined her in the hospital.

■ Appellant is actually complaining of the fact that the trial court sustained an objection of the State to a question propounded to Dr. Johnson on cross-examination which called for him to refer to his office records concerning prosecutrix and read every entry from the time she first became his patient that had any relevancy "to the condition of any of her female organs or to any state of pregnancy or any

related matters." We find no abuse of discretion on the part of the trial court in sustaining the State's objection to such a question, particularly in view of the fact that the trial court permitted counsel for defendant to elicit from Dr. Johnson practically all of the information which the reading of his records would have disclosed.

It is argued in brief of appellant that the trial court erred in admitting into evidence, over appellant's objection, "any evidence obtained during the period of his unlawful arrest and detention."

We have heretofore expressed the view that appellant was not unlawfully arrested or detained.

No mention is made in appellant's brief in connection with the point presently under consideration of the holdings in Mallory v. United States, supra, or McNabb v. United States, supra, which we understand not to be applicable to the states.

Counsel for appellant cite only one case in their brief in support of the argument made in support of his contention presently considered and that is Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, which holds, in effect, that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court. *Mapp* is not an apt citation. But we will observe that no contention was made in the trial court that any evidence was admitted in violation of the *Mapp* rule.

█ The defendant was represented by at least four lawyers on the main trial. But Mr. Messing a lawyer from another state, had the lead in that phase of the case. The record reveals innumerable instances where the trial judge demonstrated remarkable patience relative to the controversies which arose between Mr. Messing and Solicitor Booth. They became irritated with each other on frequent occasions and Mr. Messing moved on several occasions for a mistrial because of statements made by

Mr. Booth in the course of the trial. Those motions were denied by the trial court and we do not think reversible error is made to appear in such action of the court. Frequently the statements made by Solicitor Booth were provoked by statements made by Mr. Messing which were equally uncalled for in a trial of this kind.

Mrs. Shaw during the course of the trial testified to her identification of Seals at the line-up held in the Mobile County jail shortly after she was attacked, and she also made an in-court identification of Seals. See Aaron v. State, 273 Ala. 337, 139 So.2d 309.

It seems to us that her testimony as to identification would have satisfied the State. But such was not the case. The State called two police officers before Mrs. Shaw took the stand, who were present at the time of the identification and the action of the trial court in permitting those officers to testify to Mrs. Shaw's actions at that time is said by appellant to constitute reversible error.

Lt. Don Riddle, who was a police detective at the time of the line-up, testified that he was present and explained the manner in which the line-up was conducted. The court admonished Lt. Riddle as follows: "Lt. Riddle, you will confine your testimony to what you saw and what you did, and not to statements of anyone else." Thereafter Lt. Riddle testified that Mrs. Shaw, then Mrs. Hickey, identified Seals: "In the manner that she walked up in front of this defendant and made specific mention of the fact by gesture in pointing him out that he was * * * Moved her hand, Yes, sir." Lt. Riddle further testified that "when Mrs. Hickey [Mrs. Shaw] walked into the room she walked up in front of the defendant and pointed at him." Lt. Riddle was not permitted to testify as to what Mrs. Shaw said on that occasion, although the State persisted in trying to get such statements into evidence.

Lt. Charles Wimberly, who was also a detective at the time of the line-up, testi-

fied that he was present and explained the manner in which the line-up was conducted. During the course of the direct examination of Lt. Wimberly the following occurred:

"Q. Just tell what she [Mrs. Shaw] did as far as he [Seals] was concerned.

A. Mrs. Hickey [Mrs. Shaw] came out and picked out Willie Seals as being—

Mr. Messing [Counsel for Seals] Now, Your Honor.

The Court: Just tell what she did.

Mr. Booth: [Solicitor] Tell what she did as far—as to Willie Seals, that's the one we are trying; just tell—as the Judge instructed you.

A. She came out and identified Willie Seals."

Lt. Wimberly gave no testimony as to what Mrs. Shaw, then Mrs. Hickey, said on that occasion.

In brief of appellant it is asserted that the testimony of witnesses Riddle and Wimberly relative to Mrs. Shaw's identification of Seals was inadmissible in that it was hearsay. Reliance is had upon Aaron v. State, 273 Ala. 337, 139 So.2d 309; McBride v. State, 20 Ala.App. 434, 102 So. 728; and Jackson v. Vaughn, 204 Ala. 543, 86 So. 469.

In Aaron v. State, 273 Ala. 337, 345, 139 So.2d 309, 316, we did observe:

"The general rule is that evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation or inference of falsity. * * "

This is not an express holding that testimony of the nature given by witnesses Riddle and Wimberly is inadmissible.

In McBride v. State, supra, the appellant had been convicted of manslaughter in the second degree by running over one Sarah Clark with an automobile. In re-

versing the trial court, the Court of Appeals of this state said, in part:

" * * * We have searched this record diligently for evidence that would tend to connect the defendant with the commission of this crime. Such evidence is not in the record, and this defendant was entitled to the general affirmative charge. True, one of the city detectives testified that defendant was brought to headquarters on the day of the accident and 'identified by Gilbreath.' This was the merest hearsay, and should have been excluded. * * * " (102 So.2d 729)

As bearing on the distinction sought to be made by the Solicitor between actions and statements testified to by third parties, we quote from Jackson v. Vaughn, 204 Ala. 543, 544–545, 86 So. 469, 470:

"The sixth assignment is that reversible error was committed in overruling the objection to the question propounded to witness J. F. Knox:

" 'Did anybody point out to you the points where the boy was standing, or where he was struck, or anything of that kind?'

"This interrogatory, without more, had a tendency to elicit hearsay evidence."

In Key v. State, 240 Ala. 19, 197 So. 364, we were not concerned with the question presently under consideration. A violation of the hearsay rule was not involved.

We are of the opinion that the testimony of a third person who heard or observed an extrajudicial identification should not be admitted except under circumstances such as were present in Aaron v. State, 273 Ala. 337, 139 So.2d 309, or under unusual circumstances.

However, we are of the opinion that the admission in evidence of the testimony of Riddle and Wimberly was harmless error in view of the fact that the identification of Seals by Mrs. Shaw both in court and at the line-up was undisputed.—

**604**

Slaughter v. State, 21 Ala.App. 211, 106 So. 891.

We are not here concerned with the holdings of the Supreme Court of the United States in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which apparently require the exclusion of identification evidence obtained by exihbiting an accused in a line-up to identifying witnesses before trial in the the absence of his counsel. These cases were decided on June 12, 1967. On the same day the Supreme Court of the United States decided the case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199, wherein it was said: "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel *after this date.*" (Emphasis supplied) The before-trial identification in this case occurred in 1958.

On page 815 of the transcript appears the following entry:

"(Whereupon, a copy of 'Report of Investigation' dated June 25, 1958, by Nelson E. Grubbs, Toxicologist, Subject: Case No. 25445. Mrs. Mary Ann Hickey [Mrs. Shaw]. Amos Cook. Willie Seals., was received and marked for identification 'Defendant Exhibit No. M'.)"

The trial court would not admit into evidence said report so marked for identification and appellant argues that such action of the court constitutes reversible error.

"Defendant's Exhibit No. M" is not in the record and there is nothing to indicate that it could not have been copied into the record. In fact, a copy of it is attached to appellant's brief and it affirmatively appears that it could have been copied into the record without difficulty, and there is no certificate that its reproduction was difficult or impractical in an attempt to bring into play the provisions of Supreme Court Rule 41 as it read at the time the transcript of the record was filed in this court.

■■■ Since we do not have properly before us the document marked for identification "Defendant's Exhibit No. M," we cannot pass on the question as to whether it should have been admitted into evidence. However, we point out that under the provisions of § 388, Title 14, Code 1940, reports of a state toxicologist are public records which he is required to keep in his office and we presently entertain the view that such reports, properly certified, are admissible in evidence when offered by a defendant in a criminal case under § 393, Title 7, Code 1940.

In Sanders v. State, 42 Ala.App. 419, 420, 167 So.2d 174, 180, the Court of Appeals of Alabama said:

"This court can and does decide appeals. on the record proper. It is the responsibility of the appellant to get the appellate papers. If he is a pauper, then Acts. Nos. 525 and 526, approved September 16, 1963, afford him the opportunity to ask for a free transcript of the record and of evidence as well as counsel in the appellate court. *Counsel has the duty of developing the appellate record.*" (Emphasis supplied)

■■ True, it was the duty of the clerk to prepare the record to be transmitted to this court, but it was also the duty of appellant's counsel to check the record before the cause was submitted here to insure that the record was complete. It is apparent from a reading of this transcript of more than one thousand pages that appellant's. counsel did not make such a check. We point out that although the appellant was. furnished a free transcript of the proceedings below on the ground that he was an indigent, he was not represented in this. court or in the court below by court-appointed counsel. He was represented on the main trial below by four attorneys, two from this state and two from another state. The brief filed here is signed by one lawyer from this state and one out-of-state lawyer. As voluminous as is this transcript, even a casual check of the record would have dis--

closed that most of the exhibits introduced by the State and the defendant were not copied into the record and an inquiry at the office of the clerk of this court would have disclosed that no exhibit had been transmitted to this court bearing a proper certificate.

Nelson E. Grubbs, a State Toxicologist, was called as a witness by the State. He did not testify on the first trial. On cross-examination he testified that on the morning of June 16, 1963, Sergeant Lackey of the Prichard Police Department delivered to him for laboratory examination some fingernail scrapings.

 The trial court refused to permit Mr. Grubbs to testify as to what Officer Lackey told him when he delivered the fingernail scrapings. We are of the opinion that the trial court ruled correctly in that the question seeking to elicit that information called for hearsay testimony.

 Likewise, the trial court refused to permit Mr. Grubbs to testify as to what his findings were with respect to the fingernail scraping. Inasmuch as the fingernail scrapings had not been shown to have any connection with the case on trial, we entertain the view that the trial court ruled correctly.

There was an extended colloquy between counsel for both sides and the court during the course of the cross-examination of Mr. Grubbs concerning the admissibility of evidence relating to the fingernail scrapings which Officer Lackey delivered to Mr. Grubbs on the morning of June 16, 1963. During the course of that colloquy the Solicitor made the following statement: " * * * here's what I am worried about; you've already ruled this out, that when Lackey brought the fingernail scrapings in *they were supposed to be from the lady, didn't you say?*" (Emphasis supplied) The first part of the quoted statement was directed to the court, but the part which we have italicized was apparently addressed to Mr. Grubbs, for he replied, "Yes, sir."

At the time this case was tried Lackey was no longer connected with the Prichard Police Department. He was supposed to be living in Tuscaloosa and the trial court cooperated with counsel for appellant in their efforts to locate Lackey, but he could not be found. His presence was needed by the defendant to make admissible Mr. Grubbs' testimony as to what his examinations of the fingernail scrapings revealed. One cannot read this record without being convinced that Mr. Grubbs' testimony as to the result of his findings would have been beneficial to the appellant. The trial court, whom we commend for his patience, calmness and fairness during this long and heated trial, so recognized.

During the course of the cross-examination of Mr. Grubbs, counsel for appellant moved that the trial be continued in order that all reasonable efforts to locate Lackey could be exhausted. The motion was denied.

We are aware, of course, of the fact that this court has on innumerable occasions said that the matter of continuance is addressed to the discretion of the trial court, revisable only for abuse, and that rule applies even more strongly where the motion is made while the trial is in progress.

 But in this case we think the motion should have been granted. The guilt of this appellant depends almost entirely on the jury's belief of the identification of appellant made by the prosecutrix. The appellant has steadfastly proclaimed his innocence and we feel strongly that a jury passing on the guilt or innocence of appellant should have before it the testimony of Mr. Grubbs concerning the result of his examination of the fingernail scrapings delivered to him by Lackey which, as we have interpreted the record, Mr. Grubbs said "were supposed to be from the lady." We call attention to the fact that counsel for defendant did not become aware of the fact that such an examination had been made by Mr. Grubbs until after the trial had begun.

We recognize that our action in holding that the trial court erred in not granting the

continuance as requested by appellant is a departure from our usual holdings in regard to such motions. But we believe that the peculiar circumstances of this case require such a holding by this court.

For the reason indicated, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.