LEIGH M. CLARK, Retired Circuit Judge.
The Statement of the Case and Statement of the Pacts in appellant’s brief are acknowledged in appellee’s brief as “substantially correct” and “adopted ... by reference.” This warrants, we think, our recital in haec verba appellant’s short “Statement of the Case” and the first two paragraphs of his lengthy “Statement of Pacts.” Appellant’s Statement of the Case is as follows:
“A warrant charging Mr. Kenneth Jenkins with rape was issued on June 21, 1982. He was arrested and placed in the Tuscaloosa County Jail on that same date. The Public Defender was appointed on June 21, 1982, and a preliminary hearing was held on June 24, 1982. A grand jury indicted Mr. Jenkins on July 23, 1982, and he was arraigned on August 4, 1982. The case went to trial on April 4, 1983, and the jury convicted Mr. Jenkins of Rape in the First Degree on April 6, 1983. A pre-sentence investigation was requested by Mr. Jenkins on April 6, 1983. A sentencing hearing was held on May 13, 1983, and Mr. Jenkins was sentenced to life imprisonment after the court pronounced judgment on that day. Thereupon, oral notice of appeal was also given on May 13, 1983. A motion for a new trial was filed on May 17, 1983, and denied on June 20, 1983.”
The first two paragraphs of appellant’s Statement of Facts are as follows:
“LORETTA STEWART, the prosecutrix, was called as the state’s first witness. She stated that she is a 19 year old transportation student at the University of Alabama. Her home of record is Ozark, Alabama, and her student address is 502 Rose Towers, University, Alabama. Pamela Lewis and Yolanda McFarland were her college roommates in June, 1982. She was in her student apartment around 10:00 p.m., June 18, *138 1982, preparing for bed. She heard a knock on her door and put a robe over her gown to answer the door. Peering through the peep-hole, she could not see anyone but heard some mumbling. She asked who was there and then went to get a knife and went back to the door. At this time, she thought the person outside her door was a male friend of her’s who regularly came by around her bed time, against her request not to do so. She got the knife from her kitchen to play a trick on him (R. 7).
“Upon cracking the door, she did not recognize Kenneth Jenkins, Appellant. He indicated he was there to see Pam, and Loretta told him she wasn’t at home. When she asked if he wanted to leave a message, he said he would leave a message and pushed the door open and entered. Loretta said to herself that ‘she couldn’t believe he just walked on in.’ Kenneth went to the kitchen table and wrote his name and phone number on a piece of paper from her notebook (R-8). Kenneth then told her he had met Pam at ‘Bonnie and Clyde’s’ and Pam subsequently gave him her address. Loretta could tell that he had been drinking. She' sat at the table while he was writing and laid the knife on the table.”
As only one issue is presented on appeal and by such issue the sufficiency of the evidence as to defendant’s guilt is not questioned, it would serve no useful purpose for us to set forth the lurid details of what occurred within approximately an hour after defendant had gained entrance to the victim’s room as shown above. It suffices, we think, to state that according to the alleged victim’s testimony, defendant eventually succeeded in raping her; defendant testified in effect that he had sexual intercourse with her but that it was consensual.
The only issue presented by appellant is thus stated in his brief:
“DID THE TRIAL COURT ERR TO REVERSAL BY REFUSING TO ALLOW THE DEFENDANT TO INTRODUCE EVIDENCE ON THE VERACITY/CREDIBILITY OF THE PROSECU-TRIX?”
Counsel for appellant argues:
“The state introduced testimony by six of its eight witnesses concerning Loretta Stewart, the prosecutrix’s, demeanor when they saw her after the incident: Dr. Dick Owens, Medina Trenier, Officer John West, Lt. Leland Baker, Officer Gale D. Lewis, and Investigator Bobby McFerren. All of those witnesses testified that she was crying and upset. During the trial of this case the prosecutrix cried during most of her testimony and displayed a demeanor consistent with being upset. On several occasions, the defense attempted to introduce evidence of the prosecutrix’s demeanor and conduct which was very inconsistent with the demeanor described in testimony and demonstrated in front of the jury (R. 58-60, 147-150, 186-188). The demeanor about which the defense proffered evidence was demonstrated by the prosecutrix just after she left the courtroom following the preliminary hearing. During that hearing, her testimony concerned the same matters described by her during the trial and her demeanor during that testimony was the same as it was at trial (R. 58-60, 147-150, 186-188). One of the state’s witnesses did testify that the prosecutrix was crying outside the preliminary hearing and did not laugh. The defense was not allowed to question any other state witnesses about this incident following the preliminary hearing nor was the defense allowed to have its own witness testify about the incident.”
The reference is appellant’s brief to R. 58-60 leads to the following part of the cross-examination of the victim:
“Q. One final question, Miss Stewart. Directing your attention back to that preliminary hearing of June 24th besides your Attorney who was there with you?
“A. My mother and Medina. That is all I remember.
“Q. Was there any other ladies there with you besides Medina?
“A. No.
*139 “Q. Was Yolanda there?
“A. Yes, she was there.
“Q. Do you recall if Mr. Jenkins’ mother was there?
“A. I don’t recall.
“Q. Well, do you recall as you and those people you were there with were leaving that preliminary hearing that you and one or more of those people were laughing and carrying on—
“MRS. BLOOM [State’s attorney]: We are going to object, Your Honor. I don’t see the relevance and Mr. Cornwell is very obviously addressing the jury about this. I don’t see how a question can come out of all of this.
“THE COURT: Are you talking about after the preliminary hearing?
“MR. CORNWELL: Yes, Your Honor.
“THE COURT: Come up here, please.
“MR. CORNWELL: Your Honor, we expect at least the Defendant’s mother who was there to testify that when this young lady left with some of the young ladies she was with, they were laughing and carrying on about the preliminary and making statements we hope they keep him up here and they were laughing and making such statements.
“THE COURT: I will sustain.
“MR. CORNWELL: We object to Your Honor’s ruling. Your Honor, also this witness during much of her testimony has been crying and has presented a certain demeanor to this jury. At least a persuasion to their ease. I think we should be able to present something to the contrary.
“THE COURT: I don’t see how you can show somebody’s demeanor by another witness.
“MR. CORNWELL: This witness just testified to Mr. Jenkins’ demeanor.
“THE COURT: I don’t see how you can show her demeanor by another witness today how she should have acted then. I don’t see how you can show how she should have acted by another witness.
“MR. CORNWELL: The witness has testified for some two hours now and has presented some demeanor and has cried most of the time she has been up here. Of course, that has an impact on the jury as to the veracity of her testimony and the other time she performed similarly and following that she laughed about it and certainly that would be relevant.
“THE COURT: I will sustain.
“MR. CORNWELL: We object to Your Honor’s ruling.
“Q. I will ask you one final question, Miss Stewart. You testified here today some two hours. When you left that preliminary hearing was your demeanor the same as it was here today?-
“MRS. BLOOM: We object, Your Honor. Your Honor just sustained an objection on that and now he is asking it again.
“THE COURT: Sustained.”
On two other occasions during the trial, defendant attempted to introduce evidence to the effect that in leaving the courtroom after the preliminary hearing the alleged victim, while in the company of two or more friends and the victim’s mother, was laughing, and in each instance the State’s objection to such testimony was sustained. We are persuaded that, if there was prejudicial error in the trial court’s sustension of the State’s objection to such inquiry in any of the three instances, it would have more likely been while the victim was being cross-examined by defendant’s attorney than in either of the other two instances, this by reason of the zealously protected “right of cross examination, thorough and sifting,” set forth in Code of Alabama 1975, § 12-21-137. We are not fully in accord with the reasons given by the trial judge for his rulings, as shown by the quotations we have given above from the transcript, but we are persuaded that it does not clearly appear to us that such rulings constitute error to the substantial injury of the appellant. For that reason, the rulings should not be disturbed on appeal. Weaver v. State, Ala.Cr. App., 407 So.2d 568, 570 (1981); Seals v. State, 282 Ala. 586, 213 So.2d 645; Renfroe v. State, Ala.Cr.App., 382 So.2d 627, cert. denied, Ala., 382 So.2d 632; Daniels v. State, Ala.Cr.App., 375 So.2d 523. We re *140 alize that what was said in some reported opinions in which the trial court’s discretion has been held to have been abused gives us some pause in reaching a determination that the rulings of the trial court now under consideration did not constitute error prejudicial to defendant. Nevertheless, there are weighty factors exceptionally favorable to this conclusion in the instant case that did not exist in any of the cases cited by either of the parties, viz.: (1) Neither the nature and extent of the laughing sought to be shown nor the nature and extent of the victim’s participation therein is premised in the proffered evidence; (2) For aught that appears to the contrary, the incident of laughing could well have been unrelated to any of the facts in the instant case and to the preliminary trial of the case, and (3) the incident as to the laughing could well have been consistent with the victim’s demeanor at the preliminary hearing, on the trial of the case and on other occasions in which she was called upon to relive and recite the rape she said the defendant committed. Furthermore, the duty of the court on appeal to give proper value to the ruling of the trial court is emphasized by the trial court’s firsthand knowledge of the victim’s demeanor while testifying as a witness and while she was in the presence of the trial judge, as to which we have no audible or visible information.
We commend attorneys for defendant-appellant for their dedication and ability in the trial court and on appeal and for their astute selection of the only possible issue, a perplexing one, as to whether the judgment of the trial court should be reversed. In our opinion, it should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.